Commonwealth ex rel. Billman *v.* Burke, Warden.

Argued April 13, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Michael von Moschzisker,* for relator.

*Franklin E. Barr,* First Assistant District Attorney, with him *John H. Maurer,* District Attorney, for Commonwealth.

OPINION BY MR. JUSTICE JONES, May 23, 1949:

This matter is here on the relator's petition, filed *in propria persona,* for an original writ of habeas corpus. Because of the importance in general of the question involved as to the power of a court over a sentence after the expiration of the term at which it was imposed, we ordered oral argument on the petition and, to that end, appointed for the relator competent counsel who made oral argument and filed printed brief. The district attorney of Philadelphia County, wherein the relator's conviction was had, appeared and argued for the Commonwealth both orally and by brief.

The record discloses that the relator was indicted at No. 1183, September Sessions, 1940, in the Court of Oyer and Terminer and Quarter Sessions of Philadelphia County on two counts—(1) burglary and (2) re-

ceiving stolen goods. He pleaded guilty to the second count but elected to stand trial on the burglary charge whereof he was found guilty by the jury. He was sentenced on the same day, to wit, October 3, 1940. Throughout, he had been represented by counsel.

Before imposing sentence, the trial judge (addressing the defendant) inquired—"You have five years back time [on a paroled sentence], have you, Billman?" The defendant replied, "Yes". The trial judge then directed, —"Do your back time, and two and a half to five at the end of it." The judgment of sentence, as endorsed on the back of the indictment, was as follows,—"*10/3/40 as to Billman.* Sentence, not less than *(2½) years* nor more than *(5) years* at separate and solitary confinement in the Eastern State Penitentiary, *to begin at exp. of violated parole.* By the Court, *Harry S. McDevitt* Judge." [1] From the colloquy between the defendant and the trial judge, preceding the sentencing, the court had understood that the "back time" attaching to the violated parole related to a former sentence to the Eastern State Penitentiary, whereas, in fact, it related to a sentence to the Berks County Prison. As a consequence, the penitentiary sentence imposed by the trial judge, being to a place of confinement other than the Berks County Prison, became servable at once: see Section 10 of the Act of June 19, 1911, P. L. 1055, as amended by the Act of June 22, 1931, P. L. 862, 61 PS §305 Pkt. Part. This situation having become apparent, the sentencing judge on the succeeding day signed the following order which was likewise endorsed on the back of the indictment,— "*10/4/40 Sentence as to Billman reconsidered in open Court and H.U.A. By the Court Harry S. McDevitt J.*" [2] (We were informed by counsel at bar that "H.U.A." means "Held Under Advisement").

---

[1] The italicized portions of the order, as quoted, were handwritten; the balance, a stamped form.

[2] See footnote 1, supra.

*On October 7, 1940, a new term of court began.* Four days later, viz., on October 11, 1940, the trial judge resentenced the defendant to five to ten years, entering, at the same time, the following order on the back of the indictment,—*"10/11/40 Sentence as to Billman vacated Eo Die* Sentence, not less than *(5) years* nor more than *(10) years* at separate and solitary confinement in the Eastern State Penitentiary, to be computed from *9-24-40.* By the Court, *Harry S. McDevitt* Judge." [3]

This matter has already been before the Superior Court on the relator's petition to that court for a writ of habeas corpus. See *Commonwealth ex rel. Billman v. Smith,* 152 Pa. Superior Ct. 325, 31 A. 2d 908. In speaking for the Superior Court, the late President Judge KELLER, although recognizing (p. 326) that "it is well settled that a court cannot increase or add to a sentence after the term at which it was imposed," held that "the action of the court on October 4, 1940, *reconsidering* the sentence . . . amount[ed] to a vacation of the sentence . . ."; that the *"formal* order [of October 11th] vacating the sentence was surplusage"; and that "holding the matter of sentence under advisement" within the term at which the original sentence was imposed enabled the court to re-sentence the defendant after the expiration of the term. Mindful of the great weight rightly attaching to any opinion by that able and lamented jurist, we are, nonetheless, of the opinion that the vacation of the sentence did not take place until the specific order of court to that effect was entered four days after the expiration of the term. Cf. *Commonwealth ex rel. Micholetti v. Ashe,* 359 Pa. 542, 59 A. 2d 891.

The order of reconsideration of October 4th could not have been intended by the trial judge, who acted therein *sua sponte,* as being, of itself, a definitive vacation of the sentence of the day before under which the

---

[3] See footnote 1, supra.

relator then stood committed. It is plain enough that, until the *actual* order of vacation on October 11th, the relator was held in confinement pursuant to the original sentence and beyond the end of the term of its imposition. The indisputable facts of the case admit of no other conclusion. Had the court not done anything further after entering the reconsideration order, the relator's restraint would have persisted by virtue of the sentence of October 3rd and not otherwise. Manifestly, the vacation of the original sentence did not take place until the order of October 11th to that end. From the transcript of the proceedings had before the court on that day, it is evident that the trial court's effective reconsideration of the matter of sentence awaited the court's further interrogation of the relator with respect to his former answers relative to his "back time" concerning which the trial judge then concluded that the relator had misled him.

The order of reconsideration was of no more immediate efficacy, so far as the *vacation* of the original sentence was concerned, than would have been a *rule to show cause* in the premises. Yet, it was directly held by this Court long ago that a *rule to show cause* why a sentence should not be vacated, granted in the term in which the sentence was imposed, is ineffectual to work a *vacation* of the sentence after the expiration of the term. See *Commonwealth v. Mayloy,* 57 Pa. 291. Except for the immaterial difference that in the *Mayloy* case the trial court attempted to *reduce,* rather than *increase,* the term of a sentence, the situation is so analogous to the present and the reasoning of the opinion for this Court so cogent and timely that we cannot do better than quote liberally therefrom.

The material facts of the *Mayloy* case are as follows. On July 15, 1867, Mayloy was sentenced to undergo an imprisonment of one year in the county prison and to pay a nominal fine and costs. As here, he was im-

mediately committed in pursuance of the sentence. On the same day a rule was entered at the instance of the court "to show cause why the sentence in this case should not be reconsidered." No return day was assigned to the rule. Afterwards, the term having expired, a docket entry was made under date of January 16, 1868, showing "rule absolute". Four days later (January 20, 1868), Mayloy was brought again before the court and re-sentenced to pay a nominal fine and undergo an imprisonment in the county prison for the term of six calendar months and seventeen days, to be computed from the date of the original sentence, viz., July 15, 1867, and to pay the costs of prosecution, etc. The effect of this action was to reduce the term of the original sentence.

Chief Justice THOMPSON stated the question for decision as follows: "The single question to be decided is as to the power of the criminal courts of this county [Philadelphia] to reconsider a sentence, after the term at which it was pronounced, and during the progress of its execution, and to modify or diminish its extent, the rule for which being entered at the time of sentence, and within the term."

The learned Chief Justice, after reviewing the relevant procedural background in England, said that,— ". . . the common-law principle, of the finality of judgments, is at once an answer to the argument, and a refutation of the idea, that the power to interpose exists after the term has passed.

"This principle of finality is sufficiently apparent in our own reports, without the necessity of research. 'There must be a time,' it was said by our brother STRONG in Mathers v. Patterson, 9 Casey 485, 'when the power of a court to open its judgments, obtained adversely, ceases. [etc.]' . . . The numerous authorities cited by the attorney-general and his colleague, English and American, which I need not notice more specially, establish the rule beyond a doubt. In fact, as suggested

from the bench on the argument, the finality of the sentence might be a most material thing to the rights of the convict; for if he should desire to sue out a writ of error, a rule to reconsider existing might stand greatly in his way—a final judgment not appearing on the record. . . .

"It seems to us, therefore, to result necessarily from these views that the practice is neither sustainable by the common law, as an inherent power in the courts, nor has it ever been received as the common law of the state; nor a good local custom within this county; nor a rule of practice within the power of the court to adopt either expressly or by usage."

The sentence imposed on the present relator on October 11th must, therefore, be set aside as incompetent and of no effect. Such being the case, it becomes unnecessary for us to consider the relator's other contentions that his constitutional rights were violated by the denial of effective assistance of counsel and because neither he nor counsel was notified of the "order" of October 4, 1940. Those contentions are no longer pertinent. The effect of our action is to treat the matters occurring subsequent to the imposition of the original sentence on October 3rd as nullities. The relator does not "complain of any unfairness prior to the 'vacating' of his sentence on October 4, 1940." Moreover, both of the constitutional questions raised by the relator were presented by him to the United States Court of Appeals for the Third Circuit which denied them validity. See *Commonwealth of Pennsylvania ex rel. Edward Billman v. C. J. Burke, Warden*, 170 F. 2d 413, C. A. 3 (1948).

The sentence imposed on the relator by the Court of Oyer and Terminer of Philadelphia County at No. 1183, September Sessions 1940, on October 11, 1940, is hereby vacated and set aside; and it is further ordered that the relator be released forthwith from custody thereunder; costs to be borne by the county.

Mr. Justice DREW dissents.