Commonwealth ex rel. Holly *v.* Ashe (Commonwealth, Appellant).

212

Argued January 11, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*John I. Munson,* Assistant District Attorney, with him *Fred L. Brothers,* District Attorney and *Owen B. McManus,* Assistant District Attorney, for appellant.

*Valera Grapp,* for appellee.

OPINION BY MR. JUSTICE JONES, June 27, 1951:

This matter is here on the petition of the relator for a writ of habeas corpus and separate answers by the

district attorneys of Fayette and Allegheny Counties and the Warden of the Western State Penitentiary. The material facts are not in dispute.

The petitioner is confined under sentences imposed upon him by the Court of Oyer and Terminer of Fayette County for certain crimes whereof he was duly convicted. He seeks release from detention on the ground that the court's power to impose sentence had become extinct by prior expiration of the term at which he had been found guilty. The petition was addressed to the Court of Common Pleas of Allegheny County, the jurisdiction of the situs of the relator's detention, and was by that court refused. On the relator's appeal, the Superior Court reversed, one judge dissenting. Because of the public importance of the question for decision, we allowed an appeal on the petition of the district attorney of Fayette County.

The relator was tried and convicted on December 12th and 14th, 1946, in the Court of Oyer and Terminer of Fayette County in separate trials on two indictments. He duly filed a motion for a new trial in each case. Argument on these motions was had before the court en banc on February 10, 1947, and, on February 26, 1947, the court entered an order denying both motions. All of this occurred during the December term of court.[1] Five days later, to wit, on March 3, 1947, which was the first day of the succeeding March term, the relator was sentenced on each of the indictments to the Western State Penitentiary, the sentences to run consecutively.

The Superior Court approved the relator's contention in reliance upon an unreported per curiam opin-

---

[1] In Fayette County the terms of criminal court begin respectively on the first Monday of March, June, September and December and, in each instance, the term runs to the first day of the succeeding term.

ion of this court in *Commonwealth of Pennsylvania ex rel. Henry Boyer v. Stanley P. Ashe, Warden of Western State Penitentiary, Pittsburgh, Pennsylvania,* No. 1576 Miscellaneous Docket, Western District, where it was said that "Where a court does not sentence a defendant and does nothing to preserve its power to later sentence, it does not have the power to sentence the defendant *at a subsequent term of court: Commonwealth ex rel. Michelotti v. Ashe, Warden,* 359 Pa. 542." Not only does the *Michelotti* case not support the proposition for which it is there cited but the broad language of the quoted statement exceeded the requirements of the case. As the opinion in the *Boyer* case reveals,—"Petitioner was [at the time of his conviction] accepted for military service and *was released by the court without formal order deferring or suspending sentence*" (Emphasis the author's). It was not until a year later when Boyer (while still in the Army) was returned to the court to plead guilty to another indictment, whereon he was at once sentenced, that the court assumed to pass sentence on the two convictions of the year before. It was the latter belated sentences that were voided in *Commonwealth ex rel. Boyer v. Ashe,* and rightly so, but not because the term of the conviction had passed. The true *ratio decidendi* of the *Boyer* case is that the trial court deliberately permitted its power to sentence the relator to go unexercised because of the special circumstances attending his pleas of guilty to the indictments then presented against him. The case was disposed of on the relator's petition without argument before this court and it is not discernible from the record how many members of the court actually participated in the *unreported* memorandum opinion in that case.

But, even if the *Boyer* case must be accepted as a ruling that a court loses its power to sentence one found guilty of crime upon the expiration of the term

of court at which he was convicted, it is the only instance, so far as the decided cases show, where it has been so held. True, there are *dicta* to such effect in some of our cases, but it will be found in every one of them that the trial court had assumed to exercise its sentencing power, which then became *functus,* and that, after the term, the court undertook to resentence or to sentence afresh on other convictions which had been before the court when it originally exercised its power to sentence with respect to the particular defendant.

In *Commonwealth ex rel. Michelotti v. Ashe, Warden,* 162 Pa. Superior Ct. 18, 20, 56 A. 2d 313, President Judge RHODES, speaking for a unanimous court, had correctly stated that,—"In a case where no sentence has been imposed during the term, an order of the court specifically remanding for sentence, or specifically suspending sentence to a later term, *is not absolutely necessary.* If, through inadvertence or oversight on the part of the court, sentence is not pronounced during the term at which the case is tried, the court may impose sentence at a subsequent term. 15 Am. Jur., Criminal Law, § 487, p. 141; 3 A.L.R. 1003; 97 A.L.R. 802. *This practice prevails in the criminal courts of this state"* (Emphasis supplied). It is true that we reversed the Superior Court's order in the *Michelotti* case (see *Commonwealth ex rel. Michelotti v. Ashe, Warden,* 359 Pa. 542, 59 A. 2d 891) but obviously because the trial court's power to sentence had become *functus,* having once been exercised and the sentence vacated without a reservation of power to resentence after the expiration of the term at which action was originally taken. That that is so is confirmed by what we said at p. 543 as follows,—"The court below sentenced relator on each of the six bills of indictment and, in the same session, revoked and vacated each sentence. Nothing appears of record to show that the court did anything to preserve its power to *resentence.*

It could have availed itself of this right by suspend-
ing or deferring sentence or remanding relator to be
held for sentence. Failing so to do, its power of *re-
sentence* expired with the session of court: Com. ex rel.
Nagle v. Smith, 154 Pa. Superior Ct. 392, 36 A. 2d
175" (Emphasis supplied).

In *Commonwealth ex rel. Nagle v. Smith,* which we
cited in support of our action in the *Michelotti* case,
supra, the relator had been found guilty, on his plea,
to several bills of indictment but was sentenced on
only one. The court took no action to suspend or
temporarily defer sentence on the other convictions but,
after the term had passed, sought to impose sentence
on one of the other bills. The Superior Court reversed,
saying, in that connection, that "the court might have
imposed at the time separate sentences on each bill of
indictment or separate sentences on each count of a bill
of indictment. Sentence, however, was limited to one bill
of indictment, and the court's power to sentence on
such remaining indictments therefore expired with
that term of court, no power to sentence thereon having
been preserved by any action of the court." The under-
lying reason why the court could no longer sentence
on the remaining indictments was because it had ex-
ercised its power within the term with respect to con-
victions of the defendant had during the term. Thereby
its power in such connection was exhausted and it could
not thereafter sentence the defendant on a prior con-
viction. The rationale of the *Nagle* case is indicated by
its quotation from our opinion in *Moskowitz's Registra-
tion Case,* 329 Pa. 183, 190, 196 A. 498, that "A court
may not legally resentence a criminal after the term
has ended . . . . If it were permissible to amend, modify
or revise sentences without this limitation the entire
administration of criminal justice would be disrupted
and manifest abuses would result." In the matter of
sentencing a convicted defendant, a court may not toy

with him by purporting to exercise its power to sentence and then later attempting to change the sentence or add a new one. It is for just such restraint that the end of the term makes for the complete finality of the original sentence or judgment. But, a court is authorized to sentence a convict once regardless of the expiration of the term at which the conviction was had.

Our memorandum decision in *Commonwealth ex rel. Bernstein v. Burke,* No. 21 Misc. Dkt. No. 9 (Eastern District), cannot be distinguished, in principle, from the *Nagle* case, supra, in the slightest degree.

As was further said by the Superior Court in the *Michelotti* case at pp. 20-21,—"It is well settled that, where a sentence is imposed during the term, the court is without power to alter the sentence, either by increasing or reducing the punishment imposed, after the expiration of the term at which the defendant was *convicted.* Com. v. Downer, 161 Pa. Superior Ct. 339, 342, 53 A. 2d 897. And, in the absence of an order suspending sentence or temporarily deferring action on specific counts of an indictment or on several bills of indictment to which defendant at the same time pleaded guilty or upon which during the term he was convicted by a jury, a sentence on one count or on one bill exhausts the power of the court; and that power may not be revived at a later term. Com. ex rel. Nagle v. Smith, 154 Pa. Superior Ct. 392, 36 A. 2d 175; Com. ex rel. Bernstein v. Burke, 21 Misc. Docket No. 9 (Supreme Court, Sept. 30, 1947)." The thought is more exactly expressed by substituting the word "sentenced" in the above quotation for the word "convicted" where we have emphasized it.

Once the power to sentence has been exercised, in whole or in part, or waived, expressly or by conduct, a court may not thereafter change or modify a sentence except within the term at which it was entered

or waived or, where vacated within the term, the power to resentence subsequently has been reserved likewise within the term. See *Commonwealth ex rel. Billman v. Burke,* 362 Pa. 319, 323-324, 66 A. 2d 251; *Commonwealth v. Mayloy,* 57 Pa. 291; and the *Michelotti, Nagle* and *Bernstein* cases, supra.

In the *Mayloy* case, Chief Justice Thompson said that,—". . . the common-law principle, of the finality of judgments, is at once an answer to the argument, and a refutation of the idea, that the power to interpose [*by change of sentence*] exists after the term has passed." As is well known, the judgment in a criminal case is the sentence and not the conviction. In *Commonwealth ex rel. Paige v. Smith,* 130 Pa. Superior Ct. 536, 541, 198 A. 812, President Judge Keller said for the Superior Court,—"We have ruled that an order suspending the imposing of sentence is not appealable, because not a final judgment,—(See Com. v. Carelli, 90 Pa. Superior Ct. 416, 421, 422)—and have quashed appeals taken from such orders: Com. v. Mellon, 81 Pa. Superior Ct. 20. This was done in recognition of the well-established rule that final judgment in a criminal case means sentence. The sentence is the judgment: Miller v. Aderhold, 288 U.S. 206, 210; Hill v. Wampler, 298 U.S. 460, 464; Berman v. United States, 302 U.S. 211." *Commonwealth v. Trunk,* 311 Pa. 555, 565, 167 A. 333, which is special to its peculiar facts, does not derogate from the foregoing in the slightest; it expressly recognized the general rule ". . . that appeals may not be taken in criminal proceedings where judgment of sentence has not been passed. . . ."

The petitioner has not advanced any meritorious reason in support of his contention that a court of competent jurisdiction loses its power to sentence a convicted defendant after the expiration of the term at which the conviction was had. The books will be searched in vain (the *Boyer* case, it will be recalled,

is unreported) for a single decision by any court of this State holding on facts similar to those of the instant case that the relator is entitled to go free because the court did not impose sentence upon him until after the term at which his guilt was finally adjudicated. Even the familiar "two-term rule" (Act of March 31, 1860, P.L. 427, Sec. 54, 19 PS § 781) does not operate to thwart a court's jurisdiction of an accused or save him from trial and punishment, upon conviction later: see *Commonwealth v. Mitchell,* 153 Pa. Superior Ct. 582, 586-587, 34 A. 2d 905, affirmed on the opinion of Judge BALDRIGE, 349 Pa. 559, 37 A. 2d 443. All that rule does is to free the accused from further custody while awaiting trial which can be had any number of terms after his original commitment: see *Commonwealth v. Mitchell,* supra; cf., also, *Commonwealth v. Halderman,* 299 Pa. 198, 200, 149 A. 476.

There is neither statute nor rule requiring that a court impose sentence during the term in which a defendant is convicted. Nor do we think the common law requires the absolute release of a convict even though his arrest, preliminary detention, indictment, trial and conviction were proper and without error and he was in no way overreached, if uncounseled, or otherwise deprived of due process, merely because the trial court did not sentence him within the term. The suggestion that the constitutional right of an accused to a speedy trial requires that he be sentenced timely is, of course, true. But, the rule as to sentencing within the term, which the relator advocates, will not insure timely sentences if all the trial judge needs do to extend his power to sentence beyond the term is to direct that "H.U.A." (meaning "Held Under Advisement") or "Sentence Suspended" or "Sentence Deferred" be endorsed upon the indictment. For any unnecessary delay in the sentencing of an incarcerated defendant, a petition for habeas corpus is the efficient means for cor-

recting the abuse. If actualities are to be recognized, the defendant in the instant case was called for sentence, and sentenced, within *five days* after his conviction had become final upon entry of the court's order dismissing his motions (following verdict). But, as matters transpired, a term return day had intervened.

We do not think that the sovereign power to punish for crime which the people have vested in their courts depends for its uniform and continued applicability upon anything so fortuitous as a trial judge's failure to recite a rote in term time. The words of Chief Justice LEWIS in *Beale v. The Commonwealth,* 25 Pa. 11, 22, are peculiarly apposite here: "The common law embodies in itself sufficient reason and common sense to reject the monstrous doctrine, that a prisoner whose guilt is established by a regular verdict is to escape punishment altogether, because the Court committed an error in passing the sentence [or, as here, in not passing it]. If this Court sanctioned such a rule, it would fail to perform the chief duty for which it was established. Our duty is to correct errors, and to 'minister justice'. But such a course would perpetuate error, and produce the most intolerable injustice."

Order reversed and writ refused.

———

DISSENTING OPINION BY MR. JUSTICE HORACE STERN:

The majority opinion makes the challenging statement that "even if the *Boyer* case must be accepted as a ruling that a court loses its power to sentence one found guilty of crime upon the expiration of the term of court at which he was convicted, it is the only instance, so far as the decided cases show, where it has been so held. True, there are *dicta* to such effect in some of our cases, but it will be found in every one of

them that the trial court had assumed to exercise its sentencing power, which then became *functus*, and that, after the term, the court undertook to resentence or to sentence afresh on other convictions which had been before the court when it originally exercised its power to sentence with respect to the particular defendant."

I find this statement to be incorrect in three fundamental particulars:

(1)  So far from the *Boyer* case being the *only* instance in which it was held that a court loses its power to sentence after the expiration of the term, there are at least *four* decisions in our appellate courts in which it was definitely so ruled.

(2)  So far from such rulings being merely *dicta*, they were expressly stated to be the basis upon which, and upon which alone, those cases were decided.

(3)  So far from their involving a *resentencing* after a sentence had previously been imposed and the sentencing power become *exhausted*, no such circumstance existed in any of those cases.

In *Commonwealth, ex rel. Nagle v. Smith, Warden*, 154 Pa. Superior Ct. 392, 36 A. 2d 175, the relator pleaded guilty to several bills of indictment but was sentenced on only one of them. No action was taken on the others, nor was sentence thereon deferred or suspended. The court attempted at a later term to impose sentence on one of these other bills. The Superior Court unanimously held, in a per curiam opinion, that such sentence was void, saying (p. 395, A. p. 176): "Relator was sentenced on one bill of indictment, and on the others to which he at the same time pleaded guilty the court took no action whatsoever. He was not remanded and held for sentence on the other bills, nor was sentence thereon suspended or temporarily deferred. The court might have imposed at the time sep-

arate sentences on each bill of indictment or separate sentences on each count of a bill of indictment. Sentence, however, was limited to one bill of indictment, *and the court's power to sentence on such remaining indictments therefore expired with that term of court, no power to sentence thereon having been preserved by any action of the court."* (citing cases). The majority opinion asserts that the only reason for this decision was that the court, having sentenced on one bill of indictment, had so exhausted its power that it could not sentence after the term even on an entirely different bill. But can it really be seriously argued that if a defendant pleads guilty to two bills of indictment, one charging, let us say, rape, and the other robbery, and the court imposes sentence on one of those bills, it thereby exhausts its sentencing power so as to prevent it, *for that reason,* from thereafter imposing sentence on the other? The Superior Court did not decide the *Nagle* case on the basis of any such obvious absurdity. Its decision rested solely upon the fact, *as it expressly and clearly stated,* that "the court's power to sentence on [the] remaining indictments . . . expired with that term of court, *no power to sentence thereon having been preserved by any action of the court."* If the ratio decidendi had been (as the majority opinion would have it) that the sentence on the one bill had exhausted the power, *no action of the court could have preserved the power* by suspending or deferring the sentence, and the Superior Court certainly would not have suggested that that could have been done.

The next authority is *Commonwealth, ex rel. Bernstein v. Burke, Warden,* 21 Misc. Docket No. 9, Eastern District. The relator there was indicted on five bills and was sentenced on only one of them. The court later attempted to sentence on one of the other bills. Our own court, in a per curiam opinion, unanimously held that such attempted sentence must be vacated,

*there having been no order suspending sentence on this
other bill during the original term.*

The next authority is *Commonwealth ex rel. Miche-
lotti v. Ashe, Warden,* 359 Pa. 542, 59 A. 2d 891, where,
in a per curiam opinion, we reversed the Superior
Court, (162 Pa. Superior Ct. 18). There the trial court
had sentenced the relator on six bills of indictment, but,
during the same term, it revoked and vacated the sen-
tences. It did not suspend or defer sentence or remand
relator to be held for sentence, but nevertheless it at-
tempted at a later term to impose sentences on those
bills. We held that such sentences were illegal, saying
(p. 543, A. p. 892) : "We are unanimously of opinion
that the learned Superior Court was in error in their
conclusion that the sentences here involved were legal.
The court below sentenced relator on each of the six
bills of indictment and, in the same session, revoked
and vacated each sentence. *Nothing appears of record
to show that the court did anything to preserve its
power to resentence. It could have availed itself of
this right by suspending or deferring sentence or re-
manding relator to be held for sentence. Failing so to
do, its power of resentence expired with the session
of court.*" (citing cases).

The majority opinion seeks to distinguish this case
by arguing that the reason for our decision was be-
cause the trial court had attempted to *re*sentence,—
in other words, to impose a sentence after a sentence
had been previously imposed. This contention, how-
ever, entirely disregards the fact that the sentences
had been revoked and vacated during the same term
in which they had been imposed and therefore there
were no sentences in existence at all at the expiration
of the term; hence the case was not one of an attempt
to "*re*sentence" in the sense of amending or adding to
an existing previous sentence but only in the sense of

imposing a sentence where a previous one had been validly cancelled and voided during the original term. If our decision were, as the majority opinion argues, explainable on the theory that the later sentences were *re*sentences of sentences originally imposed we would not have said, as we did, that the trial court could have preserved its power by suspending or deferring sentence or remanding relator to be held for sentence, because, as I have pointed out above in regard to the *Nagle* case, the law is clear that if the later sentences were *re*sentences, they could not have been imposed even if the court had tried to preserve its right to impose them by suspending or deferring sentence. The *Michelotti* case is, in my opinion, as clear, as explicit, and as conclusive an authority, therefore, as any decision could possibly be, that, where no sentence on a bill of indictment is in existence at the time of the expiration of the term, and sentence has not been suspended or deferred, a sentence thereafter cannot lawfully be imposed.

The next authority is *Commonwealth, ex rel. Boyer v. Ashe, Warden,* 1576, Misc. Docket, Western District, where, in a unanimous per curiam opinion, we said: *"Where a court does not sentence a defendant and does nothing to preserve its power to later sentence, it does not have the power to sentence the defendant at a subsequent term of court."* In that case there was no sentence imposed during the original term and there was no order deferring or suspending sentence; we held, therefore, that a sentence imposed at a subsequent term was illegal and had to be vacated. Here there was no possible question of any *"resentence"* or alteration of a sentence after the term, since *no* sentence had ever been imposed. The majority opinion seeks to distinguish this case by stating that the reason why the court had imposed no sentence during the original term was because of special circumstances at-

tending the defendant's plea of guilty to the indictments, the "special circumstances" being that the relator had been accepted for military service. I fail to perceive how the wholly irrelevant circumstance of the court's motive—whatever it may have been—for not imposing sentence during the original term can furnish an explanation of our reason for denying it the power to impose sentence at a subsequent term. The only reason for our decision was—and we stated it in the clear and unambiguous language already quoted—that *"Where a court does not sentence a defendant and does nothing to preserve its power to later sentence, it does not have the power to sentence the defendant at a subsequent term of court."*

To summarize, therefore, we have here four clear and direct authorities to the effect that a court loses its power to sentence upon the expiration of the term, and the majority opinion cannot overcome them by ascribing to them speculative reasons other than those upon which they were expressly based. The Superior Court properly decided the present case in conformity with those decisions, and it may be pointed out that even Judge HIRT, in his dissenting opinion, said (166 Pa. Superior Ct. 599, 605, 74 A. 2d 182, 185), in speaking of the *Boyer* case, that it "merely reaffirmed the *now settled principle* that 'where a court does not sentence the defendant and does nothing to preserve its power to later sentence, it does not have the power to sentence the defendant at a subsequent term of court.' " It was Judge HIRT's thought that the present case might be distinguished from that admittedly *"settled principle"* on the ground that the relator had asked for a new trial. But the trial court did not impose sentence even in the term in which the relator's rule for a new trial was finally discharged.

Our Constitution provides in Article I, sec. 9, that "In all criminal prosecutions the accused hath a right

to . . . a *speedy* public trial . . . ." *The sentence is part of the trial.* If the expiration of the term is not to be accepted as the limit within which sentence must be imposed, what alternative limit can be established in order to protect the rights of a defendant who might otherwise languish indefinitely in jail, even though perhaps improperly convicted, but unable to appeal to an appellate court until sentence was imposed? The majority opinion suggests that "For any unnecessary delay in the sentencing of an incarcerated defendant, a petition for habeas corpus is the efficient means for correcting the abuse." But what would be the standard by which a court could determine whether there was any "unnecessary delay" in imposing sentence? Such a phrase would furnish no definite guide whatever for application to any given case for determining the maximum time within which sentence must be imposed, whereas the fixed terms of court provide exact time-compartments in which even civil, a fortiori criminal, business of the courts must, subject to well recognized exceptions, be transacted.

I would affirm the decision of the Superior Court.

Mr. Chief Justice DREW and Mr. Justice ALLEN M. STEARNE join in this dissenting opinion.