**Commonwealth ex rel. Kern v. Banmiller**

*Edward J. Kern,* p.p.

*Daniel E. Teeter,* District Attorney, for respondent.

GRAFF, P. J. (33rd Judicial District, Specially Presiding), May 3, 1962.—This matter comes before us upon a petition for a writ of habeas corpus. Defendants, Edward Kern and Joseph Gaito, were tried in the Court of Oyer and Terminer and Court of Quarter Sessions of Allegheny County, upon seven different charges arising out of an armed robbery committed upon July 23, 1959, at a branch bank of Pittsburgh National Bank, located in the Hays District of the City of Pittsburgh. The charges consisted of armed robbery, two charges of felonious assault and battery, two charges of attempted felonious assault and battery, and two charges of violation of the Firearms Act. The jury returned verdicts of guilty as to each defendant, and thereafter, consecutive sentences were imposed, totaling not less than 17 years nor more than 37 years. The jury returned a verdict of guilty on February 18, 1960, and the sentence was imposed on February 19, 1960. A motion for a new trial was filed more than four days after the imposition of sentence, and therefore not within the time limit allowed by the rule of criminal court for filing such motion. A formal motion for a new trial was actually put on record in the clerk of court's office on March 17, 1960. Although no motion to extend the time for filing the motion was made, nor was a motion made to set aside the sentence or open the judgment, the motion for a new trial was considered by the court en banc in August, 1960, immediately

after the filing of the transcript of the testimony in the cases. A petition for the allowance of an appeal nunc pro tunc was presented to the Superior Court and the Supreme Court of Pennsylvania, which petition was refused.

Three reasons are relied upon in support of the petition in this case: First, that the confessions obtained from Kern were secured by means of force, violence, and coercion, both actual and psychological, in violation of the fourteenth amendment of the Constitution of the United States, relating to due process; second, that in the conduct of the trial, especially in the charge, the trial judge so clearly manifested his personal belief in the guilt of defendant as to deprive him of a fair trial; and third, that the trial judge interfered with and prevented the defendant from appealing to the Superior Court of Pennsylvania. All of these contentions are alleged to be in violation of the fourteenth amendment of the Constitution of the United States, concerning due process of law. It is here to be observed that the trial judge and the district attorney's office both joined in the petition for the allowance of an appeal nunc pro tunc.

A hearing was had upon this petition, at which time petitioner, Kern, testified, particularly in relation to the manner in which the confessions were obtained and, also, as to other matters. The Commonwealth called a number of witnesses who testified in contradiction. The entire record of the case tried in the court of quarter sessions and oyer and terminer, including the opinion of the trial judge on the motion for a new trial, was offered in evidence. An appeal in a criminal case is a matter of right: Act of June 24, 1895, P. L. 212, sec. 7 (b). The Act of May 11, 1927, P. L. 972, 12 PS §1136, provides that no appeal shall be allowed from a sentence or order of the court of quarter sessions or oyer and terminer unless taken within 45 days from

the entry of the sentence or order. No appeal was filed within 45 days after the sentence imposed upon February 19, 1960. It is a matter of well established law that all questions which should be properly raised upon a motion for a new trial will not be considered upon a petition for a writ of habeas corpus. However, in the present case, inasmuch as petitioner has averred that his rights under the due process of law clause of the Constitution have been violated, it becomes necessary to consider the questions now raised, even though they should have been properly raised in a motion for a new trial. In the recent case of Commonwealth v. Jackson, 196 Pa. Superior Ct. 539, and also in Commonwealth v. Wright, 187 Pa. Superior Ct. 39, although an appeal to the Superior Court had not been filed within the statutory period, nevertheless the court proceeded to consider the merits of the case.

We will consider first the contention that defendant did not receive a fair trial. The undisputed evidence discloses that upon the afternoon of July 23, 1959, at approximately two o'clock, an armed robbery occurred in the branch bank of the Pittsburgh National Bank, situate in Hays District of Pittsburgh. Two men entered the institution, and by the use of threats, intimidation, and firearms, coerced the employes to give over to them a sum of approximately $27,000. The bandits left the institution, got into an automobile admittedly owned by Gaito, and drove rapidly away. The license number of the car was taken, and when it was later found, this number had been changed. An alarm was immediately given to the police of the City of Pittsburgh and various surrounding districts. A large number of officers engaged in a search for the vehicle. It was observed a short time later proceeding along a highway by officer McCrea, who followed it to Mount Lebanon where it stopped at a red light. The automobile was ordered to pull to the side of the highway. Instead

of so doing, it started at a rapid rate of speed and continued for a distance of between five and seven miles, during which a gun battle took place between the police officers and the occupants of the car. It was a chase to a dead-end street in a wooded area called "Chicken Hill". Two men got out of the car and went into this wooded area. The hill was surrounded by a great number of officers, and finally the two defendants were apprehended, but not until Officer Thompson and Officer Paga had been seriously wounded. Four guns and a sack containing approximately $26,000 was found in this area. Gaito was injured in the gun battle and subsequently made an unsigned statement admitting his implication in the robbery. A confession was first taken from Kern at the Mount Washington Police Station under the direction of F.B.I. officers and in the presence of some local policemen. After this confession was taken, Kern was then transported to Police Station No. 1 in the City of Pittsburgh where a second signed statement was taken by the Homicide Division of the City of Pittsburgh. The defense was that the robbery had been committed by two persons named Boyd and Walsh, both of whom were known to defendants, Kern and Gaito. It was testified by the defendants that the getaway car was owned by Gaito and had been previously lent to Walsh; that Gaito and Kern went to a bar on Sawmill Run Boulevard in order to pick up the automobile which had been lent to Walsh. At this place the two defendants were met by Boyd and Walsh, and an argument ensued in which Walsh was struck and knocked to the ground in an unconscious condition. Thereafter defendants testified that they quickly got in the automobile and drove away. They then discovered that Boyd was secreted in the back seat of the car, and he told them that he and Walsh had committed the robbery, and under a threat of using a gun upon them, compelled them to drive the car away, and also com-

pelled them to engage in the gun battle with the officers and take refuge upon Chicken Hill. They both testified that they had nothing to do with the bank robbery, and that their conduct whilst in the car and immediately leaving the same was entirely by reason of the fear which they had of Boyd, who was armed with a deadly weapon. Even counsel who argued the case for defendants upon the motion for a new trial admitted that the defense was so bizarre as to verge upon the fantastic. Several employes of the bank and one customer in the bank identified both Kern and Gaito as being the persons who actually entered the bank and committed the robbery.

It is contended that the court's charge was so prejudiced as to deprive defendant Kern of a fair trial. Different excerpts of the charge have been picked out of context and complaint made concerning them. It is first contended that the court flatly stated that defendants were guilty, in the following language:

"These two men, Kern and Gaito, planned this robbery, perhaps with another man named Boyd, they planned it and these two men, Kern and Gaito, actually are the ones who entered the bank and took the money by use of violence, to the extent that they had guns with them, by threats, took the money and escaped with it."

An examination of the charge clearly indicates that we were simply stating the contention of the Commonwealth. The excerpt complained of was preceded by a definition of armed robbery, which ended with:

"Then it is what we call armed robbery."

A period should have been inserted there and a new sentence begun, which immediately preceded the excerpt complained of as follows:

"And that is the charge in this case."

There should have been a comma by way of punctuation instead of a period. The excerpt complained of is immediately followed by the following words:

"If they did enter the bank."

We then stated the undisputed evidence, after which the following appears in the charge:

"Then we come now to the first question which you will have to decide and it is this, 'Who perpetrated that robbery?' 'Who was there?' "

From a reading of the entire charge, the first question which the jury had to determine was who actually committed the bank robbery, and this was clearly and unequivocally left for the jury's determination. In commenting upon the defense evidence, it was clearly stated that defendants denied any participation in the robbery, and contended that their presence in the getaway car and their conduct upon Chicken Hill was all done under the influence of fear of Boyd. In commenting upon identification of the defendants by the persons in the bank, we carefully instructed the jury that it should be carefully scrutinized by them before believing it, and that they should determine whether the identification was correct or mistaken. On the motion, counsel picked out certain words used by the court, such as, "How long were they there", and "What are the facial characteristics of these two defendants". We believe these comments were entirely proper for the reason that the length of time which the identifying witnesses had to observe the persons in the bank was very material, as well as any individual characteristics which they may have had.

It was further contended that the court improperly referred to the testimony of the witness Weis as being the first positive witness. As a matter of fact, he was a positive witness, and stated as to Kern as follows:

"Well, there he sits right there. He is baldheaded like I am. And he was tall and I spotted him right away, I never forgot his face even to this day, I haven't forgotten it."

"That's right. I never forgot."

Obviously there was no error in the charge in this respect.

It was also complained that the court erred in charging as follows:

"Well, the Commonwealth's contention is that those persons were according to their record and according to what Kern volunteered here, he had been in Alcatraz for armed robbery, they knew their way around and the first thing they would do would be to change the license plate on their car and that is what the Commonwealth contends they did."

This comment was made for the reason that Kern testified as follows:

"Q. Had you explained that to Agent Cashdollar prior to his writing this statement?

"A. I had told him the story as I related it to the jury, beforehand, and I already stated that that statement wasn't accepted because I had been to Alcatraz, convicted of bank robbery."

And again:

"Q. Yes.

"A. He said, 'You will make a right turn.' I said 'Gees, you used this in a bank robbery, you got hot plates on it and that', I said, 'The cops will get us—' "

"Q. How did you know it had hot plates on it?

"A. I assumed because I have robbed a bank already, I changed plates on a car."

It was Kern's own testimony which justified the comment to the jury.

It was contended that the jury had no alternative but to conclude from the character of flight that defendants were guilty. We did state, inter alia, as follows:

"But coming back . . . the Commonwealth says came out, got in this car, that they were then in flight and, Members of the Jury, people who are not guilty don't flee."

The expression that "People who are not guilty do not flee" is a truism, based upon ordinary experience of mankind. However, the instruction complained of was immediately followed by the following:

"So, if they were fleeing because of a consciousness of guilt, because of something they had done, certainly that is evidence for your consideration as to their guilt in this case."

At least five times later in commenting upon defendants' testimony, we called attention to their position that whilst they were in flight in the car, they were also under threat and control of Boyd.

It was contended that the court erred in commenting upon some of the witnesses for the Commonwealth as being officers of very high standing. We see nothing wrong with this for the reason that Lieutenant Ryan, Chief of the Robbery Squad, Captain Flynn, Chief of the Homicide Division, F.B.I. Inspectors and Captains of Police of various surrounding boroughs were engaged in the attempt to apprehend the persons who were fleeing in the automobile. We can see nothing wrong in commenting upon the character of some of the witnesses called for the Commonwealth.

The charge of the court is a matter of evidence in this case, and we are of the opinion that it did fairly and impartially submit the case to the jury. The charge contains the following:

"But, it is for you to decide, and not this Court or anything I might say to you to lead you to any conclusion contrary to what you may think. It is what you think and what you believe and the conclusion that you come to which governs in this case."

Defendant Kern was represented by Mr. Lomeo, an experienced, able and conscientious trial lawyer. At the conclusion of the charge, no exception was filed to it, nor were there any suggestions as to any alleged errors committed by the trial court when a request was made

to counsel for any such suggestions. It is clear, beyond question, that defendants received a fair trial.

It is next contended that the two confessions were obtained from Kern by the use of violence and force, both actual and psychological. There can be no doubt that where a conviction has been based upon a confession which has been coerced by police officers it constitutes a denial of due process, and is remediable by habeas corpus: Commonwealth ex rel. Sheeler v. Burke, 367 Pa. 152.

This case is relied upon by petitioner. The facts of the situation in this case are as different from the one now under consideration as day is from night. Kern testified that he was taken to Mount Washington Police Station immediately after his apprehension, and there interrogated principally by officers of the F.B.I. He stated that he had been refused a drink of water; that a towel was placed around his neck and he was choked, beaten and abused about the body; that the narrative of what happened at the bank robbery and during the flight and subsequent capture was related by him to the F.B.I. agent as having been committed by Boyd and Walsh, and that this officer substituted his name and Gaito's name for those individuals. He further testified that the writing at the end of the narrative was in his handwriting, but that his hand was controlled, and he was thus compelled to write the phrase and sign his name. It is true that the F.B.I. officers stripped Kern of his clothes in making a search of him immediately after being taken to the police station. This was testified to be standard practice and the reasons given therefor. It is not denied that after this took place, Kern was permitted to put on his underwear, and it was in this condition that the statement was obtained. Counsel for Kern now contends that this was psychological coercion. Amazingly, Kern himself never referred to this as being a cause for giving or signing

any alleged confession. The officers testified that there was no beating and abuse, and that Kern was given all of the water which he wished to drink. At seven o'clock Kern was taken to the Homicide Division at Police Station No. 1 in the City of Pittsburgh. Here a confession was taken by means of questions put by Captain Flynn and answers alleged to have been made by Kern. Here again, Kern testified that he was beaten and abused, and compelled to sign the statement. The officers testified positively to the contrary. In fact, photographs were taken of defendant, which were offered in evidence, which disclosed no injuries inflicted upon him. Here again, Kern testified that Captain Flynn substituted his name and Gaito's name for those of Boyd and Walsh in the different questions and answers contained in this confession. Here the evidence by the police officers is concisely to the effect that no coercion of any character was used. It is to be observed that when this confession was taken, Kern was fully clothed. Petitioner cites and relies upon the case of Rochin v. California, 342 U.S. 165. In that case, defendant's mouth was forced open and there was forcible extraction of his stomach contents in order to secure capsules which he had swallowed. The Supreme Court stated that such conduct shocks the conscience and illegally broke into the privacy of the accused. There is nothing of such character in the present case. The issue of whether the confessions were actual and voluntarily made was submitted to the jury in the charge concerning which there is no complaint. The jury concluded that they were voluntary in character, and that is also the carefully considered conclusion of the trial judge.

It is next contended that the court interfered with and prevented Kern from taking an appeal, which is allowed by an Act of Assembly. Here it is to be observed that an appeal must be taken to the Superior Court within 45 days after final judgment; otherwise it can-

not be considered by the Superior Court and, consequently, should be quashed. At the time the verdict of the jury was rendered on February 18, 1960, the trial judge asked counsel if they desired to file motions for a new trial. They were advised to think the matter over until the following morning. The next morning counsel for both Gaito and Kern were asked whether they wished to file motions for a new trial, to which they replied no. At this time both Gaito and Kern were asked specifically if they wished to file motions for a new trial, and each of defendants answered in the negative. Kern now contends that at this very time he had been advised that he could file a motion for a new trial and that he intended to do so. This is in direct contradiction of his statement to the court. The trial judge received a letter from the Western Penitentiary, stamped February 23, 1960, although it had been dated February 21 by Kern. In this letter, Kern stated as follows:

"I am using this letter as a means to advise the Honorable Court that I wish to appeal the decision of the trial I had in Court ...

"I intend to write to Attorney Lomeo also today requesting that he will file the proper form for me on a motion to appeal."

This letter, for defendant's protection, was filed with the papers in the case. Later a motion for a new trial was sent in a letter directed to Thomas Barrett, Clerk of Courts, and this upon March 17, 1960, which is in the form of a motion for a new trial. Although the four-day period subsequent to the rendition of verdict for filing a motion for a new trial, as provided by the rules of court, had elapsed, at no time was any petition presented to the trial judge to extend the time for filing the motion. At no time, either within the term of the rendering of the judgment or thereafter, was any petition filed to set aside or suspend the sentence of judg-

ment. Kern was represented by Lomeo, an able and experienced trial lawyer, and when he retired from the case, Gilbert Helwig, also an experienced trial lawyer in the criminal court, was appointed to represent Kern. It is true that some time elapsed during which the testimony and charge of the court was being transcribed. This was not the fault of the trial judge for the reason that we frequently requested the reporter to transcribe the record and, in fact, so angered him that he now refuses to speak to the trial judge. We did not in any manner actually prevent the filing of an appeal within 45 days after February 19, 1960, and such an appeal could have been entered in the Superior Court of Pennsylvania. This was not done. In considering whether due process of law has not been given to an accused, the Supreme Court of the United States has held that any criminal procedure which meets the requirements of due process is permissible: Louisville and Nashville Railroad Company v. Schmidt, 177 U.S. 230; Brown v. New Jersey, 175 U.S. 172; Carter v. Illinois, 329 U.S. 173.

If petitioner now accuses the trial judge of fraud or mutual mistake, there can be little doubt but that the judgment of sentence could have been set aside, even after the term in which it was imposed had expired. See Nixon v. Nixon, 329 Pa. 256; Commonwealth v. Wright, 187 Pa. Superior Ct. 39, 42.

It has been decided in a long line of decisions that the criminal courts of this state have not power when a sentence is passed to change such judgment as a subsequent term after the sentence: Commonwealth v. Mayloy, 57 Pa. 291; Commonwealth ex rel. Billman v. Burke, 362 Pa. 319; Commonwealth v. Mackley, 175 Pa. Superior Ct. 304.

However, as previously indicated, if there was fraud, mistake, or an extraordinarily equitable situation, we are of the opinion that had defendant properly moved

through his counsel, the judgment of sentence could have been set aside, even after the term had expired, and reimposed after the consideration of the court, as expressed in the opinion filed upon the motion for a new trial, and thus the time of appeal been extended: Commonwealth ex rel. Perry v. Day, 181 Pa. Superior Ct. 73; Commonwealth v. Tanser, 187 Pa. Superior Ct. 384.

The case now under consideration is entirely similar to that of Commonwealth v. Jackson, supra, where the court stated that the appeal could not be considered for the reason that it had not been taken within the 45 day period, but nevertheless, the case was considered upon its merits by the Superior Court. That is what has been done in the present proceeding. Defendant's contention that he did not receive a fair trial, that the confessions were improperly obtained, and that he was deprived of his right of appeal are without merit. A reading of the record discloses that there was a fair trial, and that the verdicts of the jury rendered in the courts of oyer and terminer and quarter sessions were fully justified.

*Order of Court*

And now, May 3, 1962, the motion for a writ of habeas corpus is refused.