STATE OF MARYLAND *v.* HUGO ALEXANDER
HAMILTON, JR.

[No. 496, September Term, 1971.]

*Decided March 3, 1972.*

The cause was submitted on briefs to MURPHY, C. J., and MORTON and ORTH, JJ.

Submitted by *Francis B. Burch, Attorney General, James G. Klair, Assistant Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *John H. Garmer, Assistant State's Attorney for Baltimore County,* for appellant.

Submitted by *Charles E. Foos, III,* for appellee.

ORTH, J., delivered the opinion of the Court.

The Supreme Court of the United States has said that the right to a speedy trial is "one of the most basic rights preserved by our Constitution," *Klopfer v. North Carolina,* 386 U. S. 213, 226, a guarantee "as fundamental as any of the rights secured by the Sixth Amendment," *id.* at 223. But, as is not unusual, it has furnished little guidance as to the meaning and application of the right. Mr. Justice Brennan pointed out in his concurring opinion in *Dickey v. Florida,* 398 U. S. 30, at 40, that the Court has given scant attention to questions essential to the definition of the speedy trial guarantee, and has yet even to trace its contours. He observed that before *Klopfer* only three of the Court's opinions [1] dealt at any length with the right, and each of them was decided with little analysis of its scope and content. *Klopfer*

---

1. *Beavers v. Haubert,* 198 U. S. 77; *Pollard v. United States,* 352 U. S. 354; *United States v. Ewell,* 383 U. S. 116.

itself attempted no extensive analysis; nor did the later decision, *Smith v. Hooey,* 393 U. S. 374. And the Court did not consider the effect of the application of the speedy trial clause to the states in *Dickey.* The opinion of the Court in *United States v. Marion,* 92 S. Ct. 455, note 7 at 460, stated that the Court had interpreted the Sixth Amendment's speedy trial guarantee in only a small number of cases, listing eight.

This Court, on the other hand, since its inception five years past, has been obliged to construe and apply the right to a speedy trial in criminal prosecutions in some sixty reported opinions rendered in cases which have bobbed up in the wake of *Jones v. State,* 241 Md. 599. We considered the right as guaranteed by Art. 21 of the Declaration of Rights, Constitution of Maryland,[2] and since *Klopfer* was decided on 13 March 1967,[3] as guaranteed by the Sixth Amendment to the Constitution of the United States.[4] Provided no significant guidance by the Supreme Court, we enunciated principles on the foundation of prior opinions of our Court of Appeals. In applying them to the cases coming before us we early recognized that "[t]he right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." *Beavers v. Haubert, supra,* at 87. And we observed the caution that "[w]hile justice should be administered with dispatch, the essential ingredient is orderly expedition and not mere speed." *Smith v. United States,* 360 U. S. 1, 10.[5]

In our considerations we were confronted from time to time with the question when during the criminal

2. "That in all criminal prosecutions, every man hath a right * * * to a speedy trial * * *." See *State v. Long and Nelson,* 1 Md. App. 326, 331-332.
3. *Klopfer* settled the question whether the speedy trial provision of the sixth amendment applied to the states through the fourteenth amendment by holding that it does.
4. "In all criminal prosecutions,' the accused shall enjoy the right to a speedy and public trial * * *."
5. See *Long and Nelson, supra,* at 332, 335 and 341.

process the right to a speedy trial attaches. Following the lead of the Court of Appeals, we consistently held that the right to a speedy trial does not arise until a prosecution has been instituted and that an accused cannot successfully complain of delay in the institution of the prosecution on speedy trial grounds if it is within the applicable period of limitations. We summarized these holdings thusly in *State v. Lawless,* 13 Md. App. 220, 229-230:

> "In reckoning delay, it is well settled that for 'speedy trial' purposes, we look only at the time from the commencement of the prosecution (by way of warrant, information or indictment) to the time of trial. Although a general 'due process' right might be involved, there is no 'speedy trial' right guarding against undue delay in the pre-indictment or pre-arrest phase of a criminal proceeding." [6]

At long last the Supreme Court has answered the question in *United States v. Marion, supra.* Fortunately our holdings are in accord with its determination, which has

---

**6.** The Court of Appeals gave a working definition of an arrest in *Cornish v. State,* 215 Md. 64, 67-68—"the detention of a known or suspected offender for the purpose of prosecuting him for a crime." See *Duffy v. State,* 243 Md. 425, 431.

With regard to formal charges for prosecution, the 5th amendment to the federal constitution provides that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger." Maryland Rule 703, applicable at the Circuit Court level, states: "A trial for a criminal offense shall be held only on indictment * * *." "Indictment", as defined by Rule 702 a "shall include an indictment, a criminal information, and a warrant issued by a justice of the peace where a jury trial was prayed before a trial magistrate or an appeal has been taken from a trial magistrate." Under Rule 708 a person charged with commission of a misdemeanor, before indictment, may be prosecuted upon an information, but a person charged with the commission of a felony may not be prosecuted upon an information except pursuant to Rule 709 which authorizes an accused to waive his right to action by the grand jury to seek an immediate trial. In the District Courts there are "charging documents", meaning "arrest warrant, summons to a defendant, statement of charges, citation, or criminal information." District Rule 702 a.

become "the Supreme Law of the State" on the point. Art. 2, Declaration of Rights, Constitution of Maryland; *Wilson v. Turpin,* 5 Gill 56; *Howell v. State,* 3 Gill 14.[7] *Marion* asserts that "the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused.'" At 459. However, invocation of the speedy trial provision need not await indictment, information or other formal charge. It is also invoked by "the actual restraints imposed by arrest and holding to answer a criminal charge." At 463. However, the Court expressly declined "to extend the reach of the Sixth Amendment to the period prior to arrest." The rationale of the holding stems from the words of the amendment—"in all criminal prosecutions, *the accused* shall enjoy the right to a speedy and public trial * *' *."  (emphasis added). Thus, the Court pointed out at 459, "On its face, the protection of the amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution." [8] The provision affords no protection to those not yet accused, nor does it require the government to discover, investigate, and accuse any person within any particular period of time. Its guarantee runs to a criminal defendant and the guarantee is that the prosecuting authorities "will move with the dispatch which is appropriate to insure him an early and proper disposition of the charges against him," that is orderly expedition and not mere speed. *Ibid.* The Court viewed the speedy trial provision in the light of the circumstances surrounding its adoption, as it had been construed by opinions of the Supreme Court, in the context

---

7. *Marion* concerned a federal indictment, the question being whether its dismissal was constitutionally required. It determined the point on the speedy trial provisions of the Sixth Amendment although it discussed the due process clause of the Fifth Amendment tangentially. Because the speedy trial provision of the Sixth Amendment applies to the states, *Marion's* principles are controlling in state prosecutions.

8. The speedy trial provision of Art. 21 of the Maryland Declaration of Rights also applies "in all criminal prosecutions" but it extends the right to "every man", not limiting it to "the accused."

of federal and state efforts to implement it, and with regard to its purposes. It found nothing to indicate that it does not mean what it appears to say. Thus the rule is that the right to a speedy trial attaches when the putative defendant in a criminal cause becomes the accused by the arrest of him or by the charging of him under the authorized procedures of this State.

*Marion* also furnishes some guidance in another area. In that case it was the indictment which activated the speedy trial clause,[9] and the defendants did not claim there was an unconstitutional delay between indictment and trial. They relied only on potential prejudice and the passage of time between the alleged crime and the indictment. The Court said, at 465, "There is * * * no need to press the Sixth Amendment into service to guard against the mere possibility that pre-accusation delays will prejudice the defense in a criminal case since statutes of limitation already perform that function." [10] But, it added, the statute of limitations does not fully define rights of a person with respect to events occurring prior to the time he becomes an "accused." The opinion of the Court seems to acknowledge that "actual prejudice" re-

9. "In the case before us, neither appellee was arrested, charged, or otherwise subjected to formal restraint prior to indictment. It was this event, therefore, which transformed the appellees into 'accused' defendants who are subject to the speedy trial protections of the Sixth Amendment." 92 S. Ct. at 466.

10. At the common law there were no limitations as to the time within which criminal proceedings could be commenced, except for the "year and a day" rule. Clark and Marshall, *Law of Crimes,* 7th ed., § 6.20, p. 459. As Hochheimer, *Criminal Law,* 1st ed., § 87, p. 64, put it: "At common law, criminal proceedings may be instituted at any time during the life of an offender." The "year and a day" rule applies to murder and is set out in 4 Blackstone's *Commentaries* 197: "In order also to make the killing murder, it is requisite that the party die within a year and a day after the stroke received, or cause of death administered; in the computation of which, the whole day upon which the hurt was done shall be reckoned the first." See also *id.,* at 306. By statute in this jurisdiction "No prosecution or suit shall be commenced for any fine, penalty or forfeiture, or any misdemeanor except those punished by confinement in the penitentiary, unless within one year from the time of the offense committed * * *." Code, Art. 57, § 11. Other limitation periods are sometimes prescribed for particular crimes as by the exception set out in § 11. And see Art. 57, § 12. See also *Spillers v. State,* 10 Md. App. 643; *Duvall v. State,* 5 Md. App. 484.

sulting from pre-accusation delays may require the dismissal of the prosecution under the due process provision of the Fifth Amendment.[11] But we are again left uninformed. The Court said: "However, we need not, and could not now, determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires dismissal of the prosecution." At 465. Yet we are to some extent advised, subject to the caveat that it would be unwise for the Court at this juncture to attempt to forecast its decision in such cases:

> "Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution. To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case." At 465-466.

Some light on the thinking of the majority of the Court [12] is shed by the discussion in reversing the grant below of the motion dismissing the indictment:

> "The 38 month delay between the end of the scheme charged in the indictment and the date the defendants were indicted did not extend beyond the period of the applicable statute of limitations here. Appellees have not, of course, been able to claim undue delay pending trial,

---

11. The Government conceded that "the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was a purposeful device to gain tactical advantage over the accused." 92 S. Ct. at 465, citing the Brief of the United States, at 26-27.

12. Seven justices composed the Court when the case was decided 20 December 1971. Mr. Justice White delivered the opinion of the Court. Mr. Justice Douglas filed an opinion concurring in the result, in which Mr. Justice Brennan and Mr. Justice Marshall joined.

since the indictment was brought on April 19, 1970, and dismissed on June 8, 1970. Nor have the appellees adequately demonstrated that the pre-indictment delay by the Government violated the Due Process Clause. No actual prejudice to the conduct of the defense is alleged or proven, and there is no showing that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them. Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment. Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature." At 466.

We can only conclude that with respect to pre-accusation delay the burden is on the defendant to demonstrate violation of due process. He must show actual prejudice to the conduct of the defense and that the prosecution intentionally delayed to gain some tactical advantage over him or to harass him. The real possibility of prejudice inherent in any extended delay is not enough.[13]

---

13. The offense with which the defendants in *Marion* were charged was subject to a limitation of 5 years. 18 U.S.C. § 3282 (1964). In the general discussion on the point in *Marion* the precise limitation period seems to be relevant but not material. The Court said, at 464-465: "The law has provided other mechanisms to guard against possible as distinguished from actual prejudice resulting from the passage of time between crime and arrest or charge. As we said in *United States v. Ewell, supra,* 386 U. S. at 122, 86 S. Ct. at 777, 'the applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges.' Such statutes represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice; they 'are made for the respose of society and the protection of those who may [during the limitation] . . . have

*Marion* leaves unanswered what are the criteria for denial of the Sixth Amendment right to a speedy trial, the right being applicable, as we have seen, to delay between the time the person becomes the "accused" to the time of trial. We shall, therefore, not depart from our holdings with respect thereto, which we reviewed at length in *State v. Lawless, supra.* We have applied them as firmly established as recently as *Hoss v. State,* 13 Md. App. 404 and they apparently have been accepted by the Court of Appeals as indicated by the denial of certiorari from time to time as to cases in which they were the basis of our decision. We shall abide with them until the Supreme Court tells us nay.

We turn to the instant case. On 12 July 1971 an indictment was filed in the Circuit Court for Baltimore County presenting by the first count that HUGO ALEXANDER HAMILTON, Jr. on 30 December 1969, in the daytime, did unlawfully break a dwelling house with intent to steal. Related offenses were charged in five additional counts. Capias was issued the same day and on 13 July was returned "Cepi Jail." A personal recognizance was filed on 14 July 1971 and the same day counsel was appointed to represent Hamilton. On 27 July 1971 he filed, by his attorney, a "Motion to Quash Indictment." [14] It alleged that the Baltimore County Police

lost their means of defense.' *Public Schools v. Walker,* 76 U. S. (9 Wall.) 282, 299, 19 L. Ed. 576 (1869). These statutes provide predictability by specifying a limit beyond which there is an irrebuttable assumption that a defendant's right to a fair trial would be prejudiced." It then quoted from *Toussie v. United States,* 397 U. S. 112, 114-115 to the effect that the purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time, the design being to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far distant past.

Where, as in Maryland in the case of a felony or penitentiary misdemeanor, there is no limitation to commencement of prosecution within the life of the offender, it may be that we must assess the length of the pre-accusation delay to determine whether, under particular circumstances, it is so overly stale by due process considerations as to give rise to an irrebuttable assumption that a defendant's right to a fair trial would be prejudiced.

14. Motions to quash were abolished by Rule 725 a. Defenses

Department on 13 January 1970, as a result of investigation, had obtained a warrant charging Hamilton with the breaking of the dwelling on 30 December 1969. On 3 June 1970 the warrant was recalled by the State's Attorney's Office for Baltimore County and no further legal proceedings were taken at the time. On 8 April 1971 the police, upon authority of the State's Attorney, reactivated the warrant and on 1 July arrested Hamilton on its authority. On 12 July the grand jury for Baltimore County indicted him on the charge. He claimed denial of due process and denial of a speedy trial. He asserted that "it has become impossible for the defendant to locate certain witnesses who will be necessary to the defendant's case at the time of trial," and that the denial of a speedy trial "also causes undue hardship in the preparation of defendant's case." He moved that the indictment be quashed, requesting a hearing.[15]

At the hearing on 2 August 1971 in the Circuit Court for Baltimore County it was stipulated that "the facts alleged in the motion" were correct. No other evidence was offered. The judge below summarized the situation: "In any event, you [the State] knew who he was, and you let him sit around for 18 months, and then filed an indictment against him." He thought it "unconscionable" and granted the Motion to Quash the indictment. The State appealed as was its right. Code, Art. 5, § 14; *Harris v. State,* 194 Md. 288; *State v. Hunter,* 10 Md. App. 300; *State v. Simms,* 13 Md. App. 203.

and objections which theretofore could have been raised by a motion to quash are, under the Rule, to be raised by a motion to dismiss or a motion to grant appropriate relief. We shall consider the Motion to Quash here as a motion to dismiss.

15. On 7 July 1971 Hamilton had filed, in proper person, a "Motion for Dismissal of All Charges" in which he set out substantially the same facts. He added that his whereabouts had always been known to the authorities. He claimed no prejudice to his defense but alleged that "there is clearly in progress a conspiracy by the Baltimore County Police Dept. to use the defendant as a means of closing a case which they are otherwise unable to solve, a fact which they are too embarrassed to admit." He asserted that he was "completely innocent" and submitted that "his constitutional and civil rights have been outwardly and boldly violated in a most shameful manner."

Our first inquiry is whether the speedy trial provision of the Sixth Amendment is applicable. We have no difficulty in determining that it is. Hamilton, as the putative defendant, became the "accused" for the crime charged in the challenged indictment when the warrant was issued on 13 January 1970. It was then that he was held to answer for the crime charged. Despite that he was subsequently released after he was arrested, and that the warrant was "recalled", whatever that may mean, or "lay dormant", as the Assistant State's Attorney preferred to characterize it, the warrant was not finally disposed of and was held available as authority to arrest Hamilton again. The conceded facts are that it was "reactivated" about ten months after its "recall" and that Hamilton was arrested under it about four months thereafter. We hold that the period of delay between the time of Hamilton's first arrest under the warrant, which we shall assume was 13 January 1970, the day the warrant was issued, and 27 July 1971 when he filed his Motion to Quash and requested a hearing thereon, was within the ambit of the speedy trial provision of the Sixth Amendment and is to be tested by the criteria we have heretofore found appropriate.

Four factors come into play in evaluating the facts and circumstances of a particular case to determine if there has been a denial of a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) prejudice to the accused; and (4) waiver by the accused. We articulated these factors in *Hall v. State*, 3 Md. App. 680, 685-686 and have consistently applied them. What is to be considered in applying each of the factors has been repeatedly discussed at length in our prior opinions and rehashed in *State v. Lawless, supra*. We do not think that the record here is complete enough for us to make the independent constitutional appraisal required of us when a constitutional right is involved. *Herbert v. State,* 10 Md. App. 279, 287; *Gardner v. State,* 10 Md. App. 233, 245. Nor do we feel that the lower court had sufficient facts and circumstances before it to enable a proper

evaluation in arriving at a decision.[16] Therefore, we shall vacate the order granting the motion to dismiss and remand the case for further proceedings. Rule 1071 (a). The lower court shall conduct an evidentiary hearing, receiving such relevant and material evidence as it deems proper to enable a consideration of the length of the delay, the reason for the delay, prejudice to the accused, and waiver by the accused as those factors have been explained and construed in past opinions of this Court. It shall then determine the motion on the evidence so adduced. We believe that the purposes of justice will be advanced by permitting such further proceedings.

*Order of 2 August 1971 vacated; case remanded for further proceedings in accordance with this opinion.*

---

16. We note that in the *pro se* motion to dismiss all charges, filed on 7 July 1971, see note 14 *supra*, it was set out that "Said warrant was lifted in June of 1970, allowing the defendant to be released on June 24, 1970, at which time the defendant received two (2) years probation being found guilty of forgery in Baltimore City." No reasons whatsoever were advanced at the hearing for any of the actions of the State regarding the charges here considered. There was no attempt to explain why the prosecution had been discontinued and the warrant "recalled" or why prosecution was again commenced over a year later by "reactivating" the warrant and obtaining an indictment.