## MICHAEL DOUGLAS REESE *v.* STATE OF MARYLAND

[No. 351, September Term, 1972.]

*Decided February 2, 1973.*

---

74

The cause was argued before ORTH, C. J., and POWERS, J., and WILLIAM M. CAVE, Associate Judge of the District Court of Maryland for District 6 and ROBERT J. WOODS, Associate Judge of the District Court of Maryland for District 5, specially assigned.

*Elloyd Lotridge,* with whom was *Mary Ellen T. Rinehardt* on the brief, for appellant.

*Harry A. E. Taylor, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Raymond G. Thieme, State's Attorney for Anne Arundel County, Charles Carlson* and *Gerald V. Anders, Assistant State's Attorneys for Anne Arundel County,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

## I

On 2 February 1972, before a commissioner for the 7th District of the District Court of Maryland, Roland C. Beadenkopf swore to and subscribed an application for an "Arrest Warrant/Summons" to be issued against MICHAEL DOUGLAS REESE. Maryland District Rule 706.[1] The "concise statement of facts showing probable cause that defendant committed a criminal offense", called for in the application, was that Reese "on or about Feb. 2, 1972 at Vernon's Delly, Crain Hwy * * * acted

---

1. The Maryland District Rules are hereinafter cited as "M.D.R." Citation of "Rule" shall refer to the Maryland Rules of Procedure.

in an abusive manner with profanity in the presence of my wife." The "formal charge" designated was "Violation of Code, Art. 27, Sec. 123." On the basis of the application the commissioner issued a summons the same date commanding Reese to appear for trial at a place and date specified to answer charges lodged against him by Beadenkopf.[2] The summons set out as a "Concise statement of essential facts constituting the offense charged": "The sworn application for summons claims that on February 2, 1972 at Vernons Crain Hwy. Glen Burnie Md. you did act in a disorderly manner to the disturbance of the public peace." It continued: "You are formally charged with violation of Code, Art. 27, Sec. 123."[3]

According to the entries on the docket of the District Court, case no. 31385, Reese was tried in that Court on the summons as the charging document[4] on 9 March 1972 upon a plea of not guilty. See Code, Art. 26, § 145 (b) (5) (ii); M.D.R. 720. He was found guilty and fined $100 and costs.[5] He noted an appeal on 4 April 1972, Code, Art. 26, §. 156 (d).

---

2. The name of the complainant as spelled in the summons was "Beachenkopf" but his address and telephone number were given. The name appears as "Beadenkopf" in the transcript of the trial on appeal held in the Circuit Court for Anne Arundel County.

3. At the time the summons here was issued, a commissioner, see Code, Art. 26, § 154 (a), was authorized to receive applications and determine probable cause only for arrest warrants, § 154 (c). Nevertheless, under § 154 (c) (i) in any criminal case within the exclusive jurisdiction of the District Court, a commissioner could, in lieu of issuing a warrant, issue a summons upon certain determinations made by him. As the violation of Code, Art. 27, § 123, is a misdemeanor carrying a maximum penalty of a fine of not more than $50 and imprisonment in jail for a period of not more than 60 days or both, Code, Art. 27, § 123 (d), the offense is within the exclusive jurisdiction of the District Court. Code, Art. 26, § 145 (b) (2) (i), and § 145 (b) (4).

Code, Art. 26, § 154 (c) was amended by Acts 1972, ch. 181, § 24, effective 1 July 1972. As amended, the statute authorized a commissioner to receive applications and determine probable cause for criminal summonses as well as arrest warrants. Paragraph (i) of subsection (c) was eliminated, as were paragraphs (ii) and (iii).

4. "'Charging document' means arrest warrant, summons to a defendant, statement of charges, citation, or criminal information." M.D.R. 702 a. See M.D.R. 726.

5. The maximum penalty authorized is prescribed by Code, Art. 27, § 123 (d). See note 3 *supra*.

On 12 May 1972 the case came on for trial in the Circuit Court for Anne Arundel County. Code, Art. 26, § 156 (a). The case was tried de novo. Idem. Reese pleaded not guilty, and waived trial by jury. Motion for judgment of acquittal was made at the close of all the evidence and denied. The case was continued until 15 May at which time counsel were heard. The court offered to place Reese on probation without finding a verdict, but Reese refused to consent. Code, Art. 27, § 641; *Sanders v. State*, 8 Md. App. 17, 19. Thereupon, the court rendered a verdict of guilty. It imposed a fine of $10 and ordered Reese to pay costs. Reese moved for a new trial which, upon hearing, was denied. On 28 June 1972, upon petition of Reese timely filed, we required the case to be certified to us for review and determination. Code, Art. 5, § 21; Rule 1010; Rule 1011 b.

## II

At the trial in the Circuit Court for Anne Arundel County the evidence adduced by the State concerning the events leading to the charge against Reese did not vary materially from that adduced by the defense. It appeared that there were two phases to the incident. The first phase consisted of the events which occurred on 2 February 1972 about 8:30 p.m. in Vernon's Carry Out store on the Crain Highway in Anne Arundel County. The second phase consisted of the events which occurred shortly thereafter on what was apparently a parking lot immediately outside the store. Beadenkopf, a Baltimore County auxiliary policeman in civilian clothes, his wife, Carol Lee, and Reese were among ten or twelve people clustered around the counter in the store ordering food. One of Reese's companions suggested that they play the pinball machines in the liquor store next door. In a conversational tone, but loud enough for Beadenkopf about five feet away to overhear, Reese said he "did not want to play the fucking pinballs, they beat us for too much money in the last few weeks." Beadenkopf objected to

the language and "asked the man to watch his mouth." Reese, according to Beadenkopf, still addressing his friends, said: "Oh, I got to watch my mouth. Whose got the keys to the car? I left my mouth in the glove compartment." Reese left the store. Beadenkopf followed him to talk to him about using such language in front of Mrs. Beadenkopf. Beadenkopf testified: "Well I tried to talk to Mr. Reese about the language in front of my wife and his friends came out and circled me and started jumping in my face, 'What did I know about the law,' and so forth * * *." They told Beadenkopf to call the police and Beadenkopf did so. The State attempted to elicit the specifics of what happened outside the store, asking "exactly what did Mr. Reese do?" Beadenkopf replied: "Just carried on, sir. That's all." He was asked what he meant by carrying on and to describe Reese's activities. He said:

"Well when the police arrived on the scene and asked for some identification he snagged the driver's license out of the officer's hand and refused to give him identification at first. Then again after more officers arrived on the scene he give identification. He still was carrying on and they placed him under arrest, and I didn't see the man no more until I went to court."

Beadenkopf never explained in more detail exactly what he meant by "carrying on", although he was asked to do so. Reese gave his version of "snagging" the license from the police officer's hand:

"When the police officers came and I gave the—my identification to Officer Call and he passed it to an Officer Booth of the Anne Arundel County Police, and Officer Booth passed it to Mr. Beadenkopf. I didn't see where as Mr. Beadenkopf should have my wallet with the identification, whereas I could see that a police officer would have this right. So I took my wallet from Mr. Beadenkopf. Both police officers

had my full name and address and any pertinent information that they could get from my identification cards."

Beadenkopf was asked how the language and actions of Reese affected him, his "physical feelings and emotions." He replied: "Sir, I was really surprised, a full grown man using this type of language in front of women, plus in a place of business." Asked if he had "any other emotions besides surprise", Beadenkopf said: "Just a loss of respect, that's all, and like I say, being a man I thought that something should have been said to him. That's about all." He made his feelings clearer on cross-examination: "To me, I was being made a fool of because I opened my mouth by asking him to watch his." In the direct examination of Beadenkopf, he told why he pressed charges:

"Well at the present time, when the officers was talking to him, his friends, they were going to get warrants out for me and so forth for disorderly conduct. So in turn to protect myself I went and got an—got a warrant for disorderly conduct to press charges against the man for the language he was using and the way he acted."

It appears clear from the evidence before us, although none of the police officers involved were called to testify, that Reese had not actually been "arrested." He was accosted and frisked, but Beadenkopf assured the police that he was going to swear out a warrant, and Reese was permitted to leave the scene.

### III

Code, Art. 27, § 123, as in effect at the time the incident here occurred, consisted of five subsections. Subsections (a), (b) and (e) concerned intoxication and intoxicating beverages. As there was no indication that intoxication or intoxicating beverages were in any way involved in the instant case, the evidence was patently in-

sufficient in law to sustain a conviction of the offenses proscribed by those paragraphs. Subsection (c) provided, in relevant part:

> "No person shall act in a disorderly manner to the disturbance of the public peace, upon any public street, highway, * * * or parking lot, * * * in any * * * county in this State, * * * or in any store during business hours * * *."

Subsection (d) set out the penalties for violating the prohibitions of the section.[6]

We had occasion to discuss § 123 (c) in *Matter of Nawrocki*, 15 Md. App. 252, in the light of *Drews v. State*, 224 Md. 186. We found that the gist of the crime under the statute, as it was in the cases of common law predecessor crimes, is the doing or saying, or both, of that which offends, disturbs, incites, or tends to incite, a number of people gathered in the same area. In other words, it is conduct of such a nature as to affect the peace and quiet of persons actually present who may witness the conduct or hear the language and who may be disturbed or provoked to resentment thereby. Nevertheless, the statute, in either its "doing" or "saying" proscriptions, may not punish acts or spoken words, although vulgar and offensive, which are protected by the first and fourteenth amendments. *Gooding v. Wilson*, 405 U. S. 518; *Terminiello v. Chicago*, 337 U. S. 1. Implicit in § 123 is the prohibition against a person wilfully acting in a disorderly manner by making loud and unseemly noises or by profanely cursing, swearing or using obscene language. The State has the power to punish obscene expression, but to be obscene such expression must be, in some significant way, erotic, so as to conjure up such psychic stimulation in anyone likely to be confronted with it. *Cohen v. California*, 403 U. S. 15. And the State is free to ban the simple use, "without a demon-

---

6. Acts 1972, ch. 664, effective 1 July 1972, repealed subsections (a) and (e) and made housekeeping amendments in subsection (b).

stration of additional justifying circumstances, of so-
called 'fighting words', those personally abusive epithets
which, when addressed to an ordinary citizen, are, as a
matter of common knowledge, inherently likely to pro-
voke violent reaction." *Chaplinsky v. New Hampshire,*
315 U. S. 568. Thus the obscene language prohibited
means obscene in the constitutional sense and the pro-
fanely cursing or swearing prohibited means "fighting
words." Whether the loud and unseemly noises prohibi-
tions are within the ambit of protected expression de-
pends on the nature and content of them, a question to
be determined on the facts of the particular case. See
*Matter of Nawrocki, supra,* 257-261.

## IV

With respect to the incident in its first phase as it
occurred in the store, there was no evidence sufficient in
law to bring Reese under the "doing" prong of Code, Art.
27, § 123 (c). It was not shown that he made loud or
unseemly noises or performed any other physical acts
to the disturbance of the public peace. If he is to be
found to have violated the prohibitions of the statute,
it must be under its "saying" prong. Under that prong
Reese's utterance of the word "fucking" is relevant. As
a constitutional right is involved, we must make an in-
dependent constitutional appraisal of the entire record
to determine if, in the circumstances, it was within the
constitutional ambit of free expression. *Sheppard v. Max-
well,* 384 U. S. 333, 362; *State v. Hamilton,* 14 Md. App.
582, 592. Under the decisions of the Supreme Court, we
are constrained to conclude that it was. It was not ob-
scene as used. It was not in any significant way erotic,
conjuring up erotic stimulation in anyone likely to be
confronted with it. *Cohen v. California, supra.* Nor was
the utterance without the free speech guarantee as a
"fighting word." *Gooding v. Wilson, supra,* at 523, gives
guidance with respect to "fighting words" by quoting
with approval the discussion of them by the Supreme

Court of New Hampshire in *New Hampshire v. Chap-linsky,* 91 N. H. 310, 313, 320-321; 18 A. 2d 754, 758, 762 (1941) :

"* * * ['fighting' words] have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed * * *. The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight."

It observed further that derisive and annoying words would be "fighting words" only when they have the characteristic of plainly tending to excite the addressee to a breach of peace. The utterance here was not addressed to Beadenkopf individually and, in any event, we could not say that in the circumstances of its use, "fucking" would be a word likely to cause an average person to fight, or that it would plainly tend to excite him to a breach of peace. Other utterances in the store relevant to the "saying" prong of the offense were Reese's remarks about getting the car keys because he had to watch his mouth and he had left his mouth in the glove compartment. These utterances may have been derisive and annoying, but we do not believe that here they had the characteristic of plainly tending the addressee to a breach of the peace. Beadenkopf, by his own testimony, was "surprised" and felt "a loss of respect" and thought that something should have been said to Reese, but by his very actions he was not tended to a breach of the peace. We hold that the utterances of Reese in the store were constitutionally protected and that he may not be punished for them. We conclude that with respect to that part of the incident which occurred in the store, the evidence was not sufficient in law to establish that Reese violated the prohibitions of Code, Art. 27, § 123.

Our inquiry turns to the incident in its second phase as it occurred outside the store. We assume, for the purpose of decision, that evidence regarding that phase is

relevant and material to prove the charge as made.[7] There was no evidence adduced concerning the occurrences outside the store sufficient in law to bring Reese under the "saying" prong of the statute. If indeed he then uttered "fighting words" or used obscene language, precisely what he said was not elicited. A bald statement by a witness characterizing the language as profane or obscene is not enough. See *Matter of Nawrocki, supra,* at 265. "It is * * * often true that one man's vulgarity is another's lyric." *Cohen v. California, supra,* at 25. Nor was it established that he made loud and unseemly noises.[8] Thus, if Reese was disorderly outside the store it was because of his actions—the "doing" prong of the statute. The evidence with regard to Reese's activities outside the store was Beadenkopf's statement that Reese "just carried on. * * * That's all." Asked to explain, he told of Reese "snagging" the identification. We do not think that this act in the circumstances was disorderly conduct within the contemplation of the statute. We conclude that with respect to that part of the incident which occurred outside the store, the evidence was not sufficient in law to establish that Reese violated the prohibitions of Code, Art. 27, § 123.

---

7. We note, however, that the probable cause on which the summons was issued as set out in the application signed and sworn to by Beadenkopf was that Reese "acted in an abusive manner with profanity in the presence of my wife." By the testimony of Mrs. Beadenkopf, she did not leave the store until the police were arriving and did not even know what went on outside during the intervening period. It seems that Beadenkopf based his complaint, and the commissioner issued the summons, on the occurrences in the store.

We observe that as to an arrest warrant issued upon an application under District Court rules, see M.D.R. 706 a, the proper showing of probable cause in the application for the warrant is of primary significance when a search and seizure is dependent on its reasonableness as being incident to an arrest made under the authority of the warrant. Then the legality of the arrest is dependent upon the validity of the warrant, and the validity of the warrant is dependent upon the showing of probable cause as stated within the four corners of the application. We believe that when an arrest warrant is so issued upon a written and signed application under oath, its validity is to be determined as is the validity of a search and seizure warrant. See *Scarborough v. State,* 3 Md. App. 208.

8. We consider "loud" and "unseemly" in their common meaning. See *Matter of Nawrocki, supra,* at 256.

In reaching his decision, the trial judge did not think the incident was "as bad or as serious as apparently it has been built up to be." [9] Nevertheless, he thought "technically" there was a violation of the law. But he did not elucidate. He said:

> "As I pointed out I am not going into great detail, what the statute reads, it says it's disorderly conduct if you cause a disturbance of the public peace by, I forget the words it used, by loudness, it says on a street or in a public store during business hours, and so forth. There is no use getting into that. I think you were wrong and you are technically guilty, * * *."

We are not sure what the trial judge meant by "technically guilty." It is correct that Reese could have been placed on probation without a verdict had he consented, but other than that the only verdicts which could be rendered were not guilty or guilty. To be sufficient in law to justify a conviction, the admissible evidence adduced must show directly, or circumstantially, or support a rational inference of, the facts to be proved from which the trier of fact could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. *Metz v. State,* 9 Md. App. 15, 23; *Williams v. State,* 5 Md. App. 450. We find that the evidence here was not so sufficient. Having made our independent constitutional appraisal from the record of those matters involving constitutional rights, we hold that the court below was clearly erroneous in its judgment on the evidence before it. Rule 1086. As we cannot determine from the record whether or not additional probative evidence can be produced on a retrial, we vacate the judgment and remand the case for further proceedings pursuant to *Gray v. State,* 254 Md. 385, 397.

---

9. The trial judge remarked: "I don't know why the [District] judge imposed such a high fine. In fact it's about twice as much as the maximum fine permits."

In reaching a decision, the trial judge admonished Reese:

> "I think you had better use a little more discretion when you are in a public place, because what you say or do affects not only you but as you can see here, it started off innocently maybe as far as you are concerned but somebody took exception to it. Some people have different ideas of morality and everything else, and although you have all this freedom in this country you have to take other people into consideration as well as yourself."

With these statements we are in full accord.

## V

Reese contends that Code, Art. 27, § 123 is unconstitutionally vague and broad. We consider this contention because the case may be retried. We note our previous decisions finding, as a matter of constitutional law, § 123 neither vague, indefinite or overbroad. See *Hallengren v. State,* 14 Md. App. 43; *Luthardt v. State,* 6 Md. App. 251; *Bachellar v. State,* 3 Md. App. 626, reversed on other grounds, 397 U. S. 564. See also *Lynch v. State,* 2 Md. App. 546. We are not persuaded to depart from our prior holdings.

> *Judgment vacated; case remanded for further proceedings in accordance with this opinion.*