# RONALD ASHTON ERBE *v.* STATE OF MARYLAND

[No. 644, September Term, 1974.]

*Decided March 20, 1975.*

The cause was argued before ORTH, C. J., and MORTON and GILBERT, JJ.

*Kenneth A. Reich,* with whom were *Robert M. Bell* and *Piper & Marbury* on the brief, for appellant.

*Bernard A. Raum,* Assistant Attorney General, with whom were *Francis B. Burch,* Attorney General, *Milton B. Allen,* State's Attorney for Baltimore City and *Peter Semel,* Assistant State's Attorney for Baltimore City, on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

## STATEMENT OF CASE

RONALD ASHTON ERBE, born 23 November 1947, was arrested, apparently on 26 September 1968, for breaking the dwelling of Bruce Reed on 15 August 1968 in the daytime with intent to steal personal property. On 30 September, after a preliminary hearing in the Municipal Court of Baltimore City, he was bound over for action by the Grand Jury, and committed to jail in default of $1000 bail. On 2 October he posted the required bail through an insurance company and was released. He and one Owen R. Peyton were presented on 9 October and indictment 6251Y, charging them jointly with the breaking and related offenses, was filed on 21 October in the Criminal Court of Baltimore. He was arraigned on 31 October in that court,[1] and tried on 25 June 1969. He was convicted at a bench trial of breaking the dwelling with intent to steal (1st count) and grand larceny (3rd count).[2] On 1 July 1974 concurrent sentences of 3 years were imposed under each count. The execution of the sentences was suspended, and he was placed on probation in the care of the Maryland Division of Parole and Probation for 3 years from 1 July 1974, restitution to be made and court costs to be paid through the Probation Department. He noted an appeal on 9 July 1974.

---

1. Stanley S. Cohen, Esq. appeared at the arraignment on behalf of Erbe. Mr. Cohen told the court: "He informs me that next week he will pay me and at that time I will enter my appearance." The plea was not guilty. Election of a jury trial or court trial was reserved. Mr. Cohen was appointed by the court on 25 June 1969 to represent Erbe and counsel's appearance was entered on that date.

2. On 25 June 1969 a stet was entered to the indictment as to Peyton. The stet was moved by the State "because of conviction in companion case" and ordered by the court for that reason. See Maryland Rule 718.

## THE FACTS

The posture of the appeal is such that the only facts which are material concern the delay which occurred between the guilt stage and the penalty stage of the proceedings. A transcript of the guilt stage of the proceedings is not included in the record submitted to us. The docket entry under date of 25 June 1969 reads: "Release c/o Attorney Stanley S. Cohen pending Disposition." The next entry is under date of 5 March 1973: "Failed to appear for Disposition. Bench Warrant (Pink) issued." An entry on 19 December 1973 states: "Bench Warrant (Pink) returned. Cepi in Jail." On 16 January 1974 the appearance of Kenneth A. Reich, Esq. and Robert M. Bell, Esq. was entered for Erbe. They moved to dismiss the indictment. There is a transcript of proceedings had on that date. According to the court the motion was made in chambers that morning [3] and sought "dismissal of the sentencing by reason of delay in same." It seemed to the court "that it is necessary that [it] take some testimony in that regard. . . ." The court thought it ought to hear from Mr. Cohen, on the record, "as to just what he did, if anything, to get in touch with his client, who had been released in his custody on June 25, 1969." Mr. Cohen testified and was asked to describe the contact he had with Erbe from the date of conviction to early March 1973. He said he had no contact with his client. He had copies of two letters sent Erbe but that did not mean that only two letters were sent. The Erbe file had been closed and stored in the basement of the attorney's office building. "And I would not have, in January, February, or March of 1973, have pulled the file in order to have sent a letter." The attorney made no telephone calls to Erbe because he was "never able to get a phone number for Mr. Erbe. I was unsuccessful in all my attempts to contact him." Although he had some brief

---

3. The docket entry on 16 January 1974 reads: "As to Erbe, Case Resumed: Oral Motion to dismiss Indictment heard and denied." At the hearing, however, the judge said in open court that he had "perused the motion which was handed me in chambers this morning when all counsel were present." No written motion to dismiss is included in the record submitted to us.

contact with Erbe's father prior to trial, he did not attempt to contact the father in March 1973 because "he was informed prior to the time of trial, by the attorney who originally referred the case to me through his parents, that his parents were no longer going to be responsible for representation and I attempted to strike my appearance." [4] The attorney had an address which Erbe had given him. "I assume it was a good address, although as I said before, I never received any letters back saying that he had moved or that there was a change of address. And I assumed that when I sent the leters, that he received them." The address was 212 South Gilmore Street, Baltimore, Maryland 21223.

It was stipulated that Erbe was living at 212 South Gilmore Street in 1969 at the time of his convictions. He moved from that address to several other addresses in Baltimore City, but left forwarding addresses with the Post Office for each address. The stipulation, in the words of Mr. Reich, continued: "The next address he lived at, after Gilmore, I believe was Arlington Avenue; that was with his mother. Then he went to an address on Sorrell, S-o-r-r-e-l, I believe. I'm not sure of the spelling, Sorrel Road; where he lived with his father. He then went to a Ravenwood Avenue address, a Smallwood address, a McHenry Street address, and finally an address on Relcrest Road... where he did . . . leave a forwarding address."

In denying the motion, the court explained how the failure to sentence Erbe had come to light:

"The matter would have rested forever in the indefinite stage of having the defendant released in the custody or his attorney, except that on inquiry by the staff of this Court back in January, 1973, it was discovered that the case had not been closed.

The Criminal Assignment Office and the State's Attorney's Office were contacted as to why the matter had not been set down for disposition. The State's Attorney's Office and the Criminal Assignment Office each stated, in effect, that it was

---

4. Apparently this is the reason why Mr. Cohen was appointed by the court to represent Erbe. See footnote 1, *supra.*

not the responsibility of their office to set the case in for disposition or scheduling for further hearings.

Accordingly, this Court initiated the matter and had a summons sent to the defendant at 212 South Gilmore Street. The case was set in for March 5, 1973. The summons, according to the sheriff's return, had been served at 212 South Gilmore Street.

Mr. Cohen appeared at that hearing on March 5, 1973, and stated substantially what he has stated on the stand today; that he tried to communicate with the defendant, but did not know where he was, and had not heard from him in all that time.

Accordingly, a warrant was issued, and as a result, in late December of 1973, the defendant was placed in custody."

How Erbe was apprehended appeared from the testimony of Herbert S. Wilcox, Operations Director of Baltimore Goodwill Industries, testifying in behalf of Erbe in mitigation of punishment. Erbe was employed by Goodwill as a truck driver from about the middle of January 1973 to the sixth of February 1973. He left to take a job elsewhere at higher pay — "we encourage our employees to seek better jobs when they're ready." About a week before Christmas of 1973 he re-applied for his former job and was personally interviewed by Wilcox. "Part of our normal hiring process with a truck driver is that we must get a D.M.V. record and also police clearance. . . So we gave him the form for police clearance, and asked him to get those accomplished and return the next day." He did not return. Wilcox found out later that "there was an outstanding charge against him." The court noted that in the light of Wilcox's testimony, it was on inquiry of Erbe concerning his record at the Police Department that he was placed in custody.

The court requested a pre-sentence investigation. Pending receipt of the report, Erbe was released in the custody of his

attorney, Mr. Reich. The report of the investigation was filed on 15 February 1974. Sentence was imposed on 1 July.[5]

## ISSUES FOR DECISION

Erbe argues that the delay between conviction and sentence violated his constitutional rights to a speedy trial and his legal right to be sentenced without unreasonable delay bestowed upon him by Rule 761 a.

### Speedy Trial

Under the Sixth Amendment to the Constitution of the United States, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ." Under Article 21 of the Maryland Declaration of Rights, "in all criminal prosecutions, every man hath a right . . . to a speedy trial by an impartial jury. . . ." The "speedy trial" right under the Maryland Constitution is "coterminous with its Federal counterpart" and any resolution of a claim under the Sixth Amendment will be dispositive of a parallel claim under Article 21. *State v. Lawless,* 13 Md. App. 220, 225.

It is correct, as we said in *Sands v. State,* 9 Md. App. 71, 79, quoting 5 *Wharton's Criminal Law and Procedure* (1957) § 2176, p. 370, that "A criminal case is not complete and the case is not disposed of until sentence has been pronounced." But it does not necessarily follow, as Erbe would have it, that the constitutional guarantee of a speedy trial applies to the penalty stage of the trial. We pointed out in *Sands,* at 79: "Although 'conviction' and 'sentence' are commonly used synonymously, they are legally distinct. Conviction is the determination of guilt of an accused; sentence is the judgment entered thereon."

Whether the penalty stage of the trial is encompassed within the speedy trial guarantee does not seem to have been presented to the Maryland appellate courts before. Nor has the Supreme Court of the United States definitely answered

5. It appears from the record that disposition was first set for 15 March 1974. According to the docket entry on that date it was "Removed by Criminal Assignment Office." The reason for the removal is not disclosed.

the question. In *Pollard v. United States*, 352 U. S. 354, the Court, assuming *arguendo* that sentencing was part of the trial, found no violation of the Sixth Amendment because in the circumstances there the delay was not "purposeful or oppressive" and because the sentencing error was promptly remedied when discovered. At 361. *See Brady v. Superintendent*, 443 F. 2d 1307 (4th Cir. 1971).

There are cases in other jurisdictions which conclude that the speedy trial guarantee attaches to the sentencing process. *Commonwealth v. Ashe*, 368 Pa. 211, 82 A. 2d 244 (1951); *People v. Brown*, 260 Cal.App.2d 745, 67 Cal. Rptr. 288 (1968); *Juarez-Casares v. United States*, 496 F. 2d 190 (5th Cir. 1974), so hold. See *United States v. Sherwood*, 435 F. 2d 867 (10th Cir. 1970). We do not, however, find them persuasive. Of them, only *Brown* makes any attempt to explain the reasoning behind the conclusion. And in *Brown*, the California court simply quoted from another case that the guarantee of a speedy trial protects the accused against prolonged imprisonment. None of the cases refers to any direct support for its conclusion. *Ashe* cites no support whatsoever; *Brown* cites analogous support; *Juarez* cites only *Pollard* and several federal cases subsequent to that decision which simply assumed that speedy trial rights applied to the sentencing situation. See *Brooks v. United States*, 423 F. 2d 1149, 1151 (8th Cir. 1970). Finally, the statements in *Ashe* and *Brown* have been seriously eroded by subsequent decisions. See *Commonwealth v. Giovengo*, 188 Pa. Super. 220, 146 A. 2d 629 (1958); *Commonwealth v. Stewart*, 221 Pa. Super. 1, 289 A. 2d 126 (1972); *People v. Taylor*, 14 Cal.App.3d, 328, 92 Cal. Rptr. 198 (1971); *People v. Valdespino*, 15 Cal.App.3d, 207, 93 Cal. Rptr. 142 (1971). In *Stewart*, 289 A. 2d at 128, the Pennsylvania court found that "[n]o express authority therefore exists for the conclusion that the federal constitutional right to a speedy trial incorporates the right to be sentenced on a timely basis." The court decided the case on due process grounds although it did note that many of the same speedy trial considerations expressed in *Smith v. Hooey*, 393 U. S. 374 and *Klopfer v. North Carolina*, 386 U. S. 213 were present in its case. 289 A.

2d at 129. In *Valdespino*, the California court was faced with a situation where imposition of sentence was suspended and the defendant was placed on probation for two years. Ten months later he violated his probation. A hearing on his probation violation was not held until more than 2 years after his guilty verdict. His probation was extended for another year. He claimed that his right to a speedy trial had been violated because his original trial was not completed until he was sentenced for his probation violation. The court rejected this contention. It distinguished *Brown* where there had been neither sentence nor grant of probation and thus no judgment or final appealable order. It found that the "trial" did not continue beyond the entry of a judgment or other final, appealable order — the grant of probation. The court, however, did not stop there. It noted that "[o]rdinarily the trial ends with the verdict or other decision of the trier of fact." It listed four considerations which the speedy trial right was designed to protect and found them inapposite with regard to the post conviction situation, 93 Cal. Rptr. at 114-145:

> "We note also that section 1381 [6] is a legislative implementation of the constitutional right of one charged with crime to a speedy trial. As pointed out in Barker v. Municipal Court, 64 Cal. 2d 806, 812-813, 51 Cal. Rptr. 921, 415 P.2d 809, the purpose of the Constitution and of section 1381 is: (1) to protect the accused against prolonged imprisonment, (2) to relieve him of the anxiety and public suspicion attending an unresolved criminal charge, (3) to prevent his exposure to the hazards of a trial after a great lapse of time, with witnesses unavailable or their memories dulled, and (4) to avoid the possibility of concurrent sentences being denied him.

---

**6.** Section 1381 of the California Penal Code makes it mandatory upon the prosecutor to bring a defendant to trial within 90 days after he received notice from the defendant who has been incarcerated for conviction on another offense.

These considerations seem wholly inapplicable to Valdespino. His guilt on the earlier Santa Clara County charge has been conclusively determined. The anxiety and public suspicion attending an unresolved criminal charge and a lapse of time with attending problems of missing or forgetful witnesses could not concern him. Nor could he be prejudiced by the possibility of prolonged imprisonment or denial of the possibility of concurrent sentences."

*Brooks v. United States, supra,* and *Alford v. State,* 294 N.E.2d 168 (Ind. 1973), make an attempt to analyze the applicability of speedy trial considerations to the period between conviction and sentencing. Both indicate non-applicability. In *Brooks,* at 1152-1153, the 8th Circuit noted that "the sensitive concerns which surround the necessity of a speedy trial on the merits of a case generally are not applicable when the delay is between conviction and sentencing. There exists here no concern over 'oppressive incarceration' before trial, 'anxiety' over public accusation before trial, or any 'impairment' over petitioner's ability to defend himself." In *Alford,* the defendant contended that certain Indiana Rules of Criminal Procedure and the cases relating to speedy trial were applicable to sentencing. The court, after discussing the reasons for necessity for a speedy trial, rejected this contention, 294 N.E.2d at 170-171: "Once the defendant had pled guilty and is convicted of the offense, the possibility of lost evidence or fading memories of witnesses is no longer a factor. Although Alford had not been sentenced, his right to file a motion to withdraw his guilty plea or to file a petition for post conviction relief under P. C. 1 of the Indiana Rules of Procedure were in no way impaired."

We call attention to another line of cases in which state courts have voided sentences imposed after a substantial delay, *not* on speedy trial grounds, but apparently under due process principles, on the basis that the sentencing court lost its jurisdiction because of an unreasonable delay. See *People*

*v. Ruddell,* 46 Ill. 2d 248, 263 N.E.2d 48 (1970); *People v. Fay,* 10 N.Y.2d 374, 179 N.E.2d 483, 223 N.Y.S.2d 468 (1961) and cases cited therein. In *Fay,* the defendant had pleaded guilty in January of 1953 but had not been sentenced until November of 1959. The question before the court, undecided in New York at that time, was "Does an inordinately long and unexplained delay in imposing a criminal sentence cause the trial court to lose jurisdiction so that a sentence thereafter imposed is void and the defendant is entitled to habeas corpus relief?" 223 N.Y.S.2d at 469. The court listed a group of cases which answer the question affirmatively, *id.* at 470:

> "The general rule of those cases is expressed thus in People v. Penn, 302 Ill. 488, 494, 135 N.E. 92, 95: 'The effective administration of criminal law requires that one who pleads guilty or is convicted of a violation of the law shall be promptly and certainly punished, and no court has authority to suspend sentence indefinitely in such case. It is the duty of the court to pronounce judgment promptly at the term at which the conviction is had, unless upon a motion for a new trial, in arrest of judgment or for other cause, the case is continued for further adjudication, and the defendant, by recognizance or being held in custody is still required to answer the charge. If sentence is indefinitely suspended, the court loses jurisdiction, and a judgment subsequently entered is void.' "

The court noted that the Illinois Rule was not universal, *id.*:

> "An important holding to the contrary is the United States Supreme Court's in Miller v. Aderhold, 288 U. S. 206, 210, 53 S.Ct. 325, 77 L.Ed. 702 where it said that, while indefinite or overlengthy postponement is unlawful, it gives the defendant no rights at least unless he has moved for timely sentencing, since his failure so to move is a consent or waiver. But the Miller holding is not binding on us and seems at war with concepts

prevalent in this State especially since our State nowhere imposed on a defendant any duty to demand sentence and the question of retention or loss of jurisdiction should not depend on activity or nonactivity of defendant. Furthermore, a waiver is an intentional relinquishment of a known right and there is no proof here of any such intention of this relator." [7]

The court rejected *Miller* and accepted the rationale of the Illinois Rule, *id.* at 471-472:

"This State has a strong policy against unreasonable delays in criminal causes and it has been enforced to the full (see People v. Wilson, 8 N.Y.2d 391, 208 N.Y.S.2d 963, 171 N.E.2d 310). No reason appears why it should not be enforced here. Sentencing is the entry of judgment in a criminal cause. It is a part of the judicial process and, as explained in the above-cited cases from other jurisdictions, it is in the absence of compelling reasons inconsistent and disorderly to defer that part of the process. We need not stop to inquire what factors justify long delays in sentencing because we find here nothing that the law would accept as a reason. Not only orderly administration of the courts and the public interest therein demand prompt disposition of these matters but a convicted defendant also has an enforcible interest in having judgment pronounced. Until such pronouncement he cannot be eligible for pardon or commutation of sentence, and deferment of imprisonment puts off the time when he can serve his term and return to society or can be eligible for parole. In this case the sentence if promptly announced in 1953 could not have sent relator to

---

7. We note the parallels between the New York court's reasoning with regard to waiver and the Supreme Court's rationale for rejecting the "demand-waiver rule" in *Barker v. Wingo,* 407 U. S. 514. New York was one of the few states which had rejected the demand waiver rule prior to *Barker.*

prison since he was but 17 years old. Lack of a judgment prevents an appeal. For all these reasons we think the better rule is that a long and unnecessary failure to sentence is not only an error but results in lack of jurisdiction. If sentencing can be delayed 6 years without failure of jurisdiction, it can be delayed forever."

A number of other courts have followed *Miller* and answered the question posed in *Fay* negatively. See *State v. Sorrows*, 63 N. M. 277, 317 P. 2d 324 (1951). In *Fitzherbert v. State*, 229 A. 2d 697, 700 (Me. 1967), the Maine court said that the position as to loss of jurisdiction espoused by *Fay* is the minority rule.

In *Barker v. Wingo, supra,* at 532, the Supreme Court listed the interests of the defendant which the speedy trial right was designed to protect:

"This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."

It is manifest that an accused's defense cannot be impaired once he has been convicted. So the most serious interest to be protected is not susceptible to protection at that point. Of course, no appeal would lie until final judgment, attained upon the imposition of sentence. It is conceivable that delay in the right to appeal could result in prejudice to the defense in the event a new trial was awarded. See *Fay, supra,* and *Brown, supra.* But that is mere speculation. Such a claim is to be advanced if and when the speculation ripens into reality. Patently, after conviction reached without violating speedy trial precepts, "oppressive pre-trial incarceration" is not a factor, nor is the interest to "minimize anxiety and concern of the accused." "Accused"

within the contemplation of the speedy trial right has been narrowly construed by the Supreme Court in *United States v. Marion,* 404 U. S. 307, which held that the right did not attach until a person has been "accused" either by arrest or proper charge. The Court found that "[o]n its face, the protection of the Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution." *Id.* at 313. The speedy trial guarantee runs to a criminal defendant and the guarantee is that the prosecuting authorities will move with dispatch to insure an early and proper disposition of the charges against him. *State v. Hamilton,* 14 Md. App. 582, 287 A. 2d 791. Therefore, the guarantee only applies during that period of time when the prosecuting authorities are actually prosecuting the defendant. Once the "accused" is found guilty he becomes the "convicted". He is no longer an "accused" because the charges have been resolved against him. The role of the prosecuting authorities is to all intent terminated once the guilty verdict has been rendered. It then becomes the responsibility of the trial court to sentence the convicted criminal. His prosecution is complete — all that remains is to determine punishment for his wrongdoing.

In addition, when the *Barker* court talked in terms of anxiety and concern of the accused, it was referring to a presumptively innocent defendant who must exist under a cloud of suspicion and uncertainty. See *Klopfer v. State of North Carolina, supra,* at 222. But when the defendant is found guilty his presumption of innocence dissipates. While he awaits sentencing he may still be under a cloud, but it is not a cloud of "public accusation", *Klopfer, supra,* but a cloud of public guilt generated by the finding beyond a reasonable doubt that he did commit the wrongs alleged. See *Valdespino, supra.* The major concerns of the speedy trial guarantee either do not apply after conviction or are of only speculative moment. Any real prejudice suffered by an individual as a result of an unreasonable delay in sentencing may be remedied under due process principles.

We hold that the constitutional right to a speedy trial does

not apply to the penalty stage of the proceedings and that delay in the imposition of sentence is to be tested by due process standards.

In denying the motion to dismiss the case, the court said:

> "When a defendant is released in the custody of his attorney, I think that resolves into certain responsibilities both as to the attorney and as to the defendant.
>
> The evidence here, by stipulation, is that the defendant made at least four or five changes of address without notifying his counsel.
>
> Mr. Cohen testified that he did not know the address of his client after attempting to communicate with him at the only address he knew, 212 South Gilmore Street." [8]

We see no violation of due process of law in the unique circumstances here existent. The delay in sentencing was due to administrative misadventure; it was not purposeful or oppressive. There was patently no deliberate attempt to hamper Erbe. Rather, there was inadvertent inaction. The fault was accidental in conception, venial in effect, and remedied as promptly as possible when known. The key is that had Erbe felt at any time truly aggrieved by the failure to impose sentence, he need only have so indicated to his counsel, to the State or to the court. He at all times knew that he had been convicted (on appeal he does not challenge the propriety of his conviction), that he had been released in the custody of his lawyer, and that he was awaiting sentence. It was not until it came to the attention of the court that sentence had not been imposed, and Erbe was apprehended by a quirk of fate after failing to appear in answer to a served summons, that he became dissatisfied

---

8. Defense counsel conceded that there was "a dual responsibility; that of the attorney and of the defendant to keep in touch with each other." He argued, however, that the attorney did not recall "even telling Mr. Erbe what his responsibilities were; what he was supposed to do; when he might be sentenced or anything. There was just simply no contact here at all — hardly an attorney-client relationship at all."

with his status. Not only did he maintain silence, but he failed to keep in touch with his attorney and did not inform him or the court of his many changes of address. It is manifest that, until taken into custody, he was perfectly content to enjoy the status quo.

At the hearing on the motion to dismiss, Erbe produced no evidence of actual prejudice. He did not himself testify on the issue, although he may well have been a compellable witness. He now argues that he suffered "actual prejudice" in three respects: (1) five years spent under the threat of punishment; (2) the postponing of punishment, which if timely imposed, "would probably have been completed by now"; (3) the one month he spent in jail after he was arrested on the bench warrant for his failure to appear for sentencing in March 1973. None of these points was raised below. Rule 1085. In any event, he could have been sentenced either in 1969 or 1973 to a total of 25 years. Code, Art. 27, §§ 30 (b) and 340. It seems that the delay, rather than enhancing punishment, may well have lessened it. And the issuance of the bench warrant and his subsequent incarceration were directly attributable to his failure to appear or inform the proper persons of his whereabouts.

We hold that the court below did not err in denying the motion to dismiss on the ground of a denial of due process of law.[9]

*Maryland Rule 761 a*

Rule 761 a provides, *inter alia*: "Sentence shall be imposed without unreasonable delay." Erbe contends that his sentencing on 1 July 1974 was a violation of the Rule. Therefore, he argues, this Court should "vacate the conviction and sentence and dismiss the indictment." Even if the sentence was imposed after an unreasonable delay, Erbe

---

9. Even if the right to a speedy trial applied to the penalty stage of the proceeding, upon consideration of waiver and, if not waived, of the four factors involved — the length of the delay, the reason for the delay, prejudice, and assertion of the right, — we would have no difficulty in finding that Erbe was not entitled to the relief prayed. See State v. Becker, 24 Md. App. 549; Johnson v. State, 305 A. 2d 622 (Del. 1973).

is not entitled to the relief he seeks because he has failed to show that he was prejudiced by the delay.

The Rule provides no sanction for a violation of its requirement that sentencing be imposed without unreasonable delay. Thus, in the absence of a violation of constitutional rights, the imposition of sentence will not be precluded even where there has been unreasonable delay. The pertinent language of Rule 761 a is identical to Rule 32 (a) (1) of the Federal Rules of Criminal Procedure. As is the case in other states, the Maryland Rule was obviously patterned on the federal Rule. See *Fitzherbert, supra. Cf. Dyson v. State*, 6 Md. App. 453, 458. The federal courts have refused to void a sentence imposed after an unreasonable delay unless the delay was "purposeful or oppressive", *Welsh v. United States*, 348 F. 2d 885, 886-87 (6th Cir. 1965), or the defendant suffered "meaningful loss or injury to his rights." *United States v. James*, 459 F. 2d 443, 444 (5th Cir. 1972), *cert. denied* 409 U. S. 872. In *Juarez, supra*, at 192, the Court said that "[i]f there has been an unreasonable delay, *and if* that delay results in prejudice to the defendant, then a violation [of the Sixth Amendment and Rule 32] has occurred." (emphasis added) In *Application of Leibowitz*, 43 N.J. Super. 579, 129 A. 2d 466, 469 (1957), the Court held that the rule providing that sentence be imposed "without unreasonable delay" was directory and not mandatory.[10]

We hold that the court below did not err in denying the motion to dismiss on the ground of a violation of Rule 761 a.

> *Judgments affirmed; appellant to pay costs.*

---

**10.** In Stevenson v. State, 4 Md. App. 1, the accused argued that his prosecution was precluded by a violation of Rule 719, which provides that the accused shall be furnished a copy of the indictment "within a reasonable time." This Court rejected that argument, finding no violation of constitutional rights under the circumstances of the case. At 17-18.